
## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL VANDEVELDE, Individually and On Behalf of All Others Similarly Situated, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CHINA NATURAL GAS, INC., QINAN JI, ZHIQIANG WANG, DONALD YANG, DAVID SHE, CARL YEUNG and LAWRENCE LEIGHTON )<br>)<br>Defendants. ) | C.A. No. _____<br><br><br><br>Jury Trial Demanded |

## CLASS ACTION COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS

Plaintiff hereby alleges the following based upon the investigation of Plaintiff's counsel, which included a review of United States Securities and Exchange Commission ("SEC") filings by China Natural Gas, Inc. ("China Natural Gas" or "the Company"), as well as securities analysts' reports and advisories about the Company, press releases and other public statements issued by the Company, and media reports about the Company.

### NATURE OF THE ACTION

1. This is a class action on behalf of purchasers of the common stock of China Natural Gas between March 10, 2010 and August 19, 2010, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

2. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act [15 U.S.C. §§78j(b) and 78t(a)] and Rule 10b-5 promulgated thereunder by the SEC [17 C.F.R. §240.10b-5].

3. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and Section 27 of the Exchange Act.

4. Venue is proper in this District pursuant to Section 27 of the Exchange Act and 28 U.S.C. §1391(b).

5. Defendant China Natural Gas is incorporated in Delaware.

6. In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephonic communications and the facilities of the NASDAQ Global Market ("NASDAQ").

## PARTIES

7. Plaintiff Maxwell Vandevelde, as set forth in the accompanying certification, purchased the common stock of China Natural Gas at artificially inflated prices during the Class Period and has been damaged thereby.

8. Defendant China Natural Gas is a Delaware corporation. China Natural Gas is a leading provider of pipeline natural gas for industrial, commercial and residential use and compressed natural gas for vehicular fuel in Xi'an, China and the first China-based natural gas company publicly traded in the United States.

9. Defendant Qinan Ji ("Ji") is, and was at all relevant times, President, Chief Executive Officer and Principal Executive Officer of China Natural Gas.

10. Defendant Zhiqiang Wang ("Wang") is, and was at all relevant times, a director of China Natural Gas.

11. Defendant Donald Yang ("Yang") is, and was at all relevant times, a director of China Natural Gas.

12. Defendant David She ("She") is, and was at all relevant times, Chief Financial Officer of China Natural Gas.

13. Defendant Donald Yeung ("Yeung") is, and was at all relevant times, a director of China Natural Gas.

14. Defendant Lawrence Leighton ("Leighton") is, and was at all relevant times, a director of China Natural Gas.

15. Defendants Ji, Wang, Yang, She, Yeung and Leighton are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

16. Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all those who purchased the common stock of China Natural Gas between March 10, 2010 and August 19, 2010, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which any of the foregoing have or had a controlling interest.

17. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, China Natural Gas common stock was actively traded in an efficient market on the NASDAQ. While the exact number of Class members is

unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. According to China Natural Gas's Quarterly Report on Form 10-Q for the quarter ended June 30, 2010, there were 21,215,337 shares of China Natural Gas common stock outstanding as of August 6, 2010. Record owners and other members of the Class may be identified from records maintained by China Natural Gas or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

18. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law complained of herein.

19. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class action and securities litigation.

20. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    (a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

    (b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, finances and operations of China Natural Gas;

  (c)  whether the price of China Natural Gas common stock was artificially inflated during the Class Period; and

  (d)  to what extent the members of the Class have sustained damages and the proper measure of damages.

21. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## SUBSTANTIVE ALLEGATIONS

**The Abax Lotus Ltd. Senior Notes and Warrants**

22. On December 30, 2007, China Natural Gas entered into a Securities Purchase Agreement with Abax Lotus Ltd. ("Abax").

23. On January 29, 2008, Abax and China Natural Gas amended the Securities Purchase Agreement. Under the amendment, China Natural Gas agreed (a) to issue $20,000,000 in Guaranteed 5% Senior Notes due 2014 ("the Senior Notes") to Abax on or before March 3, 2008, (b) to grant Abax an option to purchase an additional $10,000,000 in Senior Notes, and (c) to issue to Abax seven-year warrants ("the Warrants") to purchase up to 2,900,000 shares of China Natural Gas common stock at an initial exercise price of $7.3652 per share, subject to certain adjustments.

24. On January 29, 2008, acting pursuant to the Securities Purchase Agreement, China Natural Gas issued to Abax $20,000,000 in Senior Notes and the Warrants. On March 3,

2008, also purportedly acting under the Securities Purchase Agreement, Abax gave notice of its intention to exercise an option to purchase an additional $20,000,000 in Senior Notes, and on March 10, 2008, China Natural Gas issued another $20,000,000 of such notes to Abax, bringing Abax's total holdings of Senior Notes to $40,000,000.  The Company's public filings do not explain how or why it issued to Abax a total of $40,000,000 in Senior Notes when the Securities Purchase Agreement gave Abax the right to only $30,000,000 in such notes.

25. The Senior Notes were issued to Abax pursuant to an indenture dated January 26, 2008 ("the Indenture").  Among other things, the Indenture limited China Natural Gas's and its subsidiaries' ability to incur debt and liens, make dividend payments and stock repurchases, make investments, reinvest proceeds from asset sales and enter into transactions with affiliates.

26. The Warrants were issued by the Company to Abax pursuant to a Warrant Agreement and Warrant Certificates.

**The February 26, 2010 Bank Loan**

27. On February 26, 2010, China Natural Gas entered into a bank loan of $17,676,000 with Pudong Development Bank Xi'an Branch ("SPDB") ("the Bank Loan") under which SPDB agreed to lend $17,676,000 to the Company's subsidiary, Jingbian Liquefied Natural Gas Co., Ltd. ("JBLNG").  The Company had the right to borrow amounts under the Bank Loan between March 1, 2010 and June 30, 2010.

28. The Bank Loan was secured by certain assets of the Company's subsidiary Xi'an Xilan Natural Gas Co., Ltd. ("XXNGC"), namely its equipment and vehicles located within the People's Republic of China, and XXNGC guaranteed the repayment of the Bank Loan.

29. On March 17, 2010, pursuant to the Bank Loan, SPDB transferred $13.2 million to JBLNG.

30. The pledge of XXNGC's equipment and vehicles located within the People's Republic of China and the guarantee of repayment under the Bank Loan were prohibited by the Indenture.

31. Due to this prohibition and as a result of the Company's entering into the Bank Loan, Abax has the right to declare a default under the Indenture after written notice, subject to the Company's right to cure the default within 30 days.

32. Pursuant to the Indenture, upon an event of default, Abax can accelerate the outstanding indebtedness, including the Senior Notes, together with all accrued interest thereon and demand immediate payment.

33. The existence of Abax's right to accelerate the outstanding indebtedness required the Company to reclassify the Senior Notes in the amount of $27,300,000 from long term liabilities to short term liabilities.

34. Under the terms of the Warrant Agreement, upon an event of default under the Indenture, the warrant holders have the right to require the Company to redeem the Warrants for a price equal to the pro rata portion of the aggregate redemption price of $17,500,000 applicable to the warrants tendered by such holders.

35. The warrant holders' right to require redemption of the Warrants required the Company to reclassify the Warrants in an amount of $17,500,000 from long term liabilities to short term liabilities.

**The Company's False and Misleading SEC Filings**

36. On March 10, 2010, China Natural Gas filed its Annual Report on Form 10-K for the year ended December 31, 2009 ("2009 Form 10-K").

37. The Individual Defendants each signed the 2009 Form 10-K pursuant to the requirements of the Exchange Act.

38. The Company did not disclose and did not properly account for the Bank Loan in its 2009 Form 10-K as a subsequent event on the consolidated financial statements footnotes.

39. On May 7, 2010, the Company filed its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 ("March 2010 Form 10-Q").

40. Defendants Ji and She signed the March 2010 Form 10-Q pursuant to the requirements of the Exchange Act.

41. The Company did not disclose and did not properly account for the Bank Loan in its March 2010 Form 10-Q. In light of the Bank Loan and the Company's resulting default under the Indenture, the Company misclassified the Senior Notes and the fair value of the Warrants as long term liabilities rather than short term liabilities.

42. The price for China Natural Gas shares closed at $8.40 per share on May 7, 2010.

43. Given the size of the Bank Loan, which was over 20% of the Company's total revenues for 2009 and more than its total operating expenses for 2009, the Defendants knew or recklessly disregarded information about the Bank Loan and its terms prior to the issuance of the Company's 2009 Form 10-K and March 2010 Form 10-Q, and knowingly or in reckless disregard of that information caused the false and misleading 2009 Form 10-K and March 2010 Form 10-Q to be issued.

44. Upon information and belief, Defendants knew that the Bank Loan violated the Indenture and put the Company in default with respect to the Senior Notes and the Warrants prior to the issuance of the Company's 2009 Form 10-K and March 2010 Form 10-Q, and

Defendants knew or recklessly disregarded that information in causing the false and misleading 2009 Form 10-K and March 2010 Form 10-Q to be issued.

**The Company's Restatement**

45.     On August 13, 2010, after the close of the market, the Company filed its Quarterly Report on Form 10-Q for the quarter ended June 30, 2010 ("2010 June 10-Q").

46.     In its 2010 June 10-Q, the Company disclosed that management had identified various deficiencies in the Company's internal controls over financial reporting and disclosure controls.

47.     In its 2010 June 10-Q, the Company disclosed the following information:

- The Bank loan of $17.7 million was not disclosed in the Company's Annual Report on Form 10-K for the year ended December 31, 2009 as a subsequent event on the consolidated financial statements footnotes. Immediately after the filing of the Company's Quarterly Report on Form 10-Q for the period ended June 30, 2010, the Company will amend its Annual Report on Form 10-K for the year ended December 31, 2009 to disclose the Bank loan of $17.7 million as a material subsequent event.

- The Company understated its restricted cash in the amount of $17.7 million and did not report the bank loans of $17.7 million in its consolidated balance sheet as of March 31, 2010.  Immediately after the filing of the Company's Quarterly Report on Form 10-Q for the period ended June 30, 2010, the Company will amend its Quarterly Report on Form 10-Q for the three months ended March 31, 2010 to include the restatement.

- Improper reclassification from short term liabilities to long term liabilities for the senior notes payable and fair value of the redeemable warrants in the amount of $45.6 million in our consolidated balance sheet as of March 31, 2010.  Immediately after the filing of the Company's Quarterly Report on Form 10-Q for the period ended June 30, 2010, the Company will amend its Quarterly Report on Form 10-Q for the three months ended March 31, 2010 to include the restatement.

48.     On August 13, 2010, at 8:49pm EDT, the Company issued a press release on PR Newswire reporting its Second Quarter 2010 Financial and Operating Results.  The press release

did not disclose any of the information about the Bank Loan and the related matters that were set forth in the 2010 June 10-Q.

49. On August 19, 2010, the Company filed a Form 8-K with the SEC, which stated as follows:

> **Item 4.02. Non-Reliance on Previously Issued Financial Statements or a Related Audit Report or Completed Interim Review.**
>
> On August 13, 2010, the Board of Directors of China Natural Gas, Inc. (the "Company"), in consultation with management and its Audit Committee, determined that the previously issued financial statements contained in the Company's Annual Report on Form 10-K for the year ended December 31, 2009 and the Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 can no longer be relied upon because of the errors discussed below in those financial statements, and that the Company will restate these financial statements to make the necessary accounting corrections. Our independent auditors have informed us that their reports originally issued related to the financial statements for the year ended December 31, 2009 and to the effectiveness of our internal control over financial reporting for the related periods also should not be relied upon.
>
> As previously disclosed in the Company's Quarterly Report on Form 10-Q for the quarter ended June 30, 2010, the management and the Board of Directors identified a material weakness in internal control over financial reporting for failure to disclose a bank loan in the amount of $17.7 million entered into on February 26, 2010 (the "Bank Loan"). This weakness resulted in the Company's understating its restricted cash by the amount of the Bank Loan.
>
> In addition, in connection with the Bank Loan, Xi'an Xilan Natural Gas Co. Ltd., the Company's variable interest entity, pledged its equipment and vehicles located within China to secure the Bank Loan (the "Pledge") and guaranteed the repayment of the Bank Loan. The Pledge is prohibited by the Indenture for the 5% Guranteed Senior Note issued to Abax Lotus Ltd. ("Abax") dated January 26, 2008 (the "Senior Notes"). As a result, Abax has the right declare a default under the Indenture after written notice and the Company's 30 days right to cure. Upon an event of default, Abax may accelerate the outstanding indebtedness together with all accrued interest thereon and demand immediate repayment. As of the date of this report, the Company has not received a notice of default from Abax.
>
> Also in connection, with the Senior Notes, the Company issued certain warrants to purchase the Company's common stock pursuant to a Warrant Agreement and Warrant Certificates. Under the terms of the Warrant Agreement, in the event of a default under the Indenture for the Senior Notes, the warrant

holders are entitled to require the Company to redeem the warrants for a price equal to the pro rata portion of the aggregate redemption price of $17,500,000 applicable to the warrants tendered by such holders.

Due to the potential event of default, the Company is required to reclassify from long term liabilities to short term liabilities for the Senior Notes and the fair value of the redeemable warrants in the amount of $45.6 million in its consolidated balance sheet as of March 31, 2010. The Company will amend its Annual Report on Form 10-K for the year ended December 31, 2009 to reclassify the liabilities for the Senior Notes and the fair value of the redeemable warrants and to disclose the Bank Loan as a subsequent event on the consolidated financial statements footnotes. In addition, the Company will also amend its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 to reclassify the liabilities for the Senior Notes and the fair value of the redeemable warrants.
The Audit Committee of the Company's Board of Directors has discussed the forgoing matters with the Company's Chief Financial Officer and its independent registered public accounting firm and our independent auditor, Frazer Frost, LLP expressed agreement with the Company's determination to amend the above referenced reports.

50.     On August 20, 2010, the Company filed an Amendment No. 1 on Form 10-K/A in which it restated its annual consolidated financial statements as of December 31, 2009. On that same day, the Company filed an Amendment No. 1 on Form 10-Q/A in which it amended its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010. The Form 10-K/A and Form 10-Q/A were filed by the Company after the close of the market on August 20, 2010.

51.     The Company's restatement resulted in the reclassification of the Senior Notes and the fair value of the redeemable warrants from long term liabilities to short term liabilities in light of the Bank Loan and resulting default under the Indenture.

52.     In its 2009 Form 10-K, the Company originally reported total current liabilities of $6,663,319. As restated, the Company reported total current liabilities of $51,455,606, representing a difference of $44,792,287 or an increase of over 700% in short term liabilities.

53. In its March 2010 10-Q, the Company originally reported total current liabilities of $7,344,135. As restated, the Company reported total current liabilities of $52,897,627, representing a difference of $45,553,492 or an increase of over 600% in short term liabilities.

54. The closing price for China Natural Gas shares declined markedly on elevated volume from a closing price of $6.64 on August 13, 2010, to a closing price on August 24, 2010 of $5.29 per share, representing a 20% decline from the closing price on August 13.

55. The market for China Natural Gas common stock was open, well-developed and efficient at all relevant times. Plaintiff and other members of the Class purchased or otherwise acquired China Natural Gas common stock in reliance upon the integrity of the market price of China Natural Gas common stock and market information relating to the Company. As a result of their purchases of China Natural Gas common stock during the Class Period, Plaintiff and the members of the Class suffered economic loss or damages under the federal securities laws.

56. By failing to disclose and properly account for the Bank Loan, Defendants presented a misleading picture of the Company's business and financial situation. Defendants' false and misleading statements had the intended effect and caused China Natural Gas common stock to trade at artificially inflated levels throughout the Class Period.

57. Upon information and belief, during the Class Period, the Individual Defendants, as senior executive officers and/or directors of China Natural Gas, were privy to confidential and proprietary information concerning China Natural Gas, its operations, finances, financial condition and present and future business prospects. The Individual Defendants also had access to material adverse non-public information concerning China Natural Gas, as discussed in detail herein. Because of their positions with China Natural Gas, the Individual Defendants had access to non-public information about its business and finances via internal corporate documents,

conversations and connections with other corporate officers and employees, attendance at management and/or board of directors meetings and committees thereof, and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or recklessly disregarded that the adverse facts specified herein had not been disclosed to, and were being concealed from, the investing public.

58. The Individual Defendants are liable as direct participants in the wrongs complained of herein. In addition, the Individual Defendants, by reason of their status as senior executive officers and/or directors, were "controlling persons" within the meaning of Section 20(a) of the Exchange Act and had the power and influence to cause the Company to engage in the unlawful conduct complained of herein. Because of their positions of control, the Individual Defendants were able to and did, directly or indirectly, control the conduct of China Natural Gas.

59. The Individual Defendants, because of their positions with the Company, controlled and/or possessed the authority to control the contents of its reports, press releases and presentations to securities analysts and through them, to the investing public. The Individual Defendants were provided with copies of the Company's reports, alleged herein to be misleading, prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Thus, the Individual Defendants had the opportunity to commit the fraudulent acts alleged herein.

60. As senior executive officers and/or directors and as controlling persons of a publicly traded company whose common stock was, and is, registered with the SEC pursuant to the Exchange Act, and was, and is, traded on the NASDAQ and governed by the federal securities laws, the Individual Defendants had a duty to promptly disseminate accurate and truthful information, among other things, with respect to China Natural Gas's financial condition

and performance, operations, financial statements, business, management, and to correct any previously issued statements that had become materially misleading or untrue, so that the market price of China Natural Gas common stock would be based upon truthful and accurate information. The Individual Defendants' misrepresentations and omissions during the Class Period violated these specific requirements and obligations.

61. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct, which operated as a fraud or deceit on purchasers of China Natural Gas common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding China Natural Gas's business, operations, management and the intrinsic value of China Natural Gas common stock, and caused Plaintiff and members of the Class to purchase China Natural Gas common stock at artificially inflated prices.

62. As alleged herein, each of the Defendants acted with scienter in that each Defendant knew, or recklessly disregarded, that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading or omitted to state facts necessary to prevent them from being materially false and misleading under the circumstances. Each Defendant knew that such statements or documents would be issued or disseminated to the investing public, and knowingly and substantially participated or acquiesced in the making, issuance or dissemination of such statements or documents as a primary violation of the federal securities laws. By virtue of their receipt or reckless disregard of information reflecting the true facts regarding China Natural Gas, their control over and/or receipt and/or modification of China Natural Gas's materially misleading statements, and/or their other associations with the Company, each Defendant was privy to confidential information

concerning China Natural Gas and knowingly or recklessly participated in the fraudulent scheme and conduct alleged herein.

## COUNT I

### Violation of Section 10(b) of the Exchange Act and Rule 10b-5
### (Against All Defendants)

63.     Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

64.     During the Class Period, Defendants disseminated or approved the materially false and misleading statements specified above, which they knew or recklessly disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading.

65.     Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (c) engaged in acts, practices, and a course of business that operated as a fraud and deceit upon the purchasers of the Company's common stock during the Class Period.

66.     Plaintiff and the Class have suffered damages in that, in reliance on the integrity of the market, they paid artificially inflated prices for China Natural Gas common stock and suffered damages when that inflation was eliminated by disclosure of information that revealed the facts and conditions hidden by Defendants' fraudulent statements and omissions, or the economic impact of those facts and conditions.  Plaintiff and the Class would not have purchased China Natural Gas common stock at the prices they paid, or at all, if they had been aware that the market price had been artificially and falsely inflated by Defendants' misleading statements.

67. As a direct and proximate result of the Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their purchases of China Natural Gas common stock during the Class Period.

## COUNT II

### Violation of Section 20(a) of the Exchange Act
### (Against the Individual Defendants)

68. Plaintiff repeats and realleges each and every allegation set forth above as if fully set forth herein.

69. The Individual Defendants acted as controlling persons of China Natural Gas within the meaning of Section 20(a) of the Exchange Act as alleged herein. By reason of their positions as officers and/or directors of China Natural Gas, the Individual Defendants had the power and authority to cause China Natural Gas to engage in the wrongful conduct complained of herein. By reason of such conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. Declaring this action to be a proper class action pursuant to Fed. R. Civ. P. 23;

B. Awarding Plaintiff and the members of the Class damages, including interest;

C. Awarding Plaintiff reasonable costs and attorneys' fees; and

D. Awarding such other relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: August 26, 2010							ROSENTHAL, MONHAIT & GODDESS, P.A.

/s/ P. Bradford deLeeuw_____
Norman Monhait (Del. Bar No. 1040)
Brad Deleeuw (Del. Bar No. 3569)
919 Market Street, Suite 1401
P.O. Box 1070
Wilmington, DE 19899
(302) 656-4433
(302) 658-7567 (fax)
nmonhait@rmgglaw.com
bdeleeuw@rmgglaw.com

*Attorneys for Plaintiff*

*Of Counsel:*

Thomas G. Shapiro
Edward F. Haber
Thomas V. Urmy, Jr.
Adam M. Stewart
Shapiro Haber & Urmy LLP
53 State Street
Boston, MA 02109
Telephone: (617) 439-3939
Facsimile: (617) 439-0134
tshapiro@shulaw.com
ehaber@shulaw.com
turmy@shulaw.com
astewart@shulaw.com