# UNITED STATES DISTRICT COURT

## DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL VANDEVELDE, Individually and on Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>  vs.<br><br>CHINA NATURAL GAS, INC., QINAN JI, ZHIQIANG WANG, DONALD YANG, DAVID SHE, CARL YEUNG, and LAWRENCE LEIGHTON,<br><br>      Defendants. | C.A. No. 1:10-cv-00728-SLR |

**OPENING BRIEF IN SUPPORT OF RICHARD CRIPPA'S MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL**

BOUCHARD MARGULES
  & FRIEDLANDER, P.A.
Joel Friedlander (#3163)
Sean M. Brennecke (#4686)
222 Delaware Avenue, Suite 1400
Wilmington, DE  19801
Telephone: (302) 573-3500
Facsimile:  (302) 573-3501
jfriedlander@bmf-law.com
sbrennecke@bmf-law.com

*Proposed Liaison Counsel*

Dated: October 25, 2010

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................................... ii

I. STATEMENT OF THE MATTER BEFORE THE COURT ............................................... 1

II. SUMMARY OF ARGUMENT ........................................................................................... 1

III. STATEMENT OF FACTS .................................................................................................. 2

IV. ARGUMENT ....................................................................................................................... 5

    A. Mr. Crippa Satisfies the "Lead Plaintiff" Requirements of the Exchange Act and Should Be Appointed Lead Plaintiff ........................................................ 5

        1. Mr. Crippa Has Timely Moved for Appointment as Lead Plaintiff ................................................................................................. 5

        2. Mr. Crippa Has the Requisite Financial Interest in the Relief Sought by the Class ......................................................................... 6

        3. Mr. Crippa Satisfies the Requirements of Rule 23 ............................... 6

    B. Mr. Crippa's Selection of Lead and Liaison Counsel Should Be Approved ............ 8

V. CONCLUSION ..................................................................................................................... 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*City of Roseville Employees Ret. Sys. v. Horizon Lines, Inc.,*
   No. 08-969, 2009 WL 1811067, (D. Del. June 18, 2009) .................................................. 7

*In re E.spire Commc'ns, Inc., Sec. Litig.,*
   231 F.R.D. 207 (D. Md. 2000) ............................................................................................ 7

**STATUTES**

15 U.S.C. §78u-4 ................................................................................................................ passim

Federal Rules of Civil Procedure Rule 23 ....................................................................... 1, 6, 7, 8

Class member Richard Crippa ("Mr. Crippa" or "Movant") respectfully submits this memorandum of law in support of Mr. Crippa's motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4; and (2) approval of his selection of Robbins Umeda LLP ("Robbins Umeda") as lead counsel and Bouchard Margules & Friedlander, P.A. ("BMF") as liaison counsel for the class.

## I.  STATEMENT OF THE MATTER BEFORE THE COURT

Presently pending in this district is a securities class action lawsuit brought on behalf of purchasers of China Natural Gas, Inc. ("China Natural Gas" or the "Company") common stock during the period between March 10, 2010 and August 19, 2010.  This action is brought pursuant to Sections l0(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. Sections 78j(b) and 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R §240.l0b-5.

## II. SUMMARY OF ARGUMENT

**1.**   The PSLRA sets forth the manner by which courts are to select a lead plaintiff. Pursuant to the PSLRA, the Court is to appoint as lead plaintiff the movant with the largest financial interest in the litigation that otherwise satisfies the requirements of Rule 23 ("Rule 23") of the Federal Rules of Civil Procedure.  *See* 15 U.S.C. §78u-4(a)(3)(B) (iii).

**2.**   Here, Mr. Crippa should be appointed as lead plaintiff because: (a) he timely filed for appointment as lead plaintiff; (b) to the best of his knowledge, Mr. Crippa has the largest financial interest in this litigation; and (c) he will adequately represent the interests of the class. *See id.*; *see also* Section IV(B), *infra*.  Additionally, Mr. Crippa has retained experienced and

competent counsel to represent the class. As the "most adequate plaintiff," Mr. Crippa's selection of Robbins Umeda to serve as lead counsel and BMF as liaison counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## III. STATEMENT OF FACTS

China Natural Gas is a Delaware corporation headquartered in the Peoples' Republic of China ("China"). The Company engages in the distribution and sale of natural gas and gasoline to commercial, industrial, and residential customers in China.

On December 30, 2007, the Company entered in to a Securities Purchase Agreement with Abax Lotus Ltd. ("Abax"). China Natural Gas and Abax subsequently amended the Securities Purchase Agreement. Under the amended agreement, China Natural Gas agreed to: (a) issue $20 million in guaranteed 5% senior notes due 2014 (the "Senior Notes") to Abax on or before March 3, 2008; (b) grant Abax an option to purchase an additional $10 million in Senior Notes; and (c) issue Abax seven-year warrants to purchase up to 2.9 million shares of the Company's common stock at an initial exercise price of $7.3652 per share (the "Warrants"). Abax gave notice of its intention to exercise an option to purchase an additional $20 million in Senior Notes, which China Natural Gas issued to Abax on March 10, 2008.[1]

The Senior Notes were issued to Abax pursuant to an indenture dated January 26, 2008 ("the Indenture"). The Indenture limited China Natural Gas's and its subsidiaries' ability to incur debt and liens, among other things, make investments, reinvest proceeds from asset sales and enter into transactions with affiliates. Pursuant to the Indenture, upon an event of default, Abax can accelerate the outstanding indebtedness, including the Senior Notes, together with all

---

[1] China Natural Gas did not disclose in its public filings why Abax was able to request an additional $20 million in Senior Notes when the amended agreement only called for Abax to exercise the option to purchase an additional $10 million worth of the Senior Notes.

accrued interest thereon and demand immediate payment. In addition, under the terms of the Warrant agreement, upon an event of default under the Indenture, the warrant holders have the right to require the Company to redeem the Warrants for a price equal to the pro rata portion of the aggregate redemption price of $17,500,000 applicable to the warrants tendered by such holders.

On February 26, 2010, the Company entered into an agreement with the Pudong Development Bank Xi'an Brach ("SPDB"), under which SPDB would lend $17,676,000 to the China Natural Gas' subsidiary, Jingbian Liquefied Natural Gas Co., Ltd. (JBLNG) (the "Bank Loan"). The Bank Loan was secured by the assets of the Company's subsidiary Xi'an Xilan Natural Gas Co., Ltd ("XXNGC"), including its equipment and vehicles located within China. In addition, XXNGC guaranteed the repayment of the Bank Loan.

The Indenture prohibited the Company from pledging XXNGC's equipment and vehicles as part of the guarantee for the Bank Loan. As a result, Abax had the right to declare a default under the Indenture after written notice, subject to the Company's right to cure the default within 30 days. Abax's right to declare a default forced the Company to reclassify the Senior Notes in the amount of $27.3 million from long term liabilities to short term liabilities. The Company also had to reclassify the Warrants in an amount of $17.5 million from long term liabilities to short term liabilities.

Despite entering into the Bank Loan on February 26, 2010, the Company did not reclassify the Warrants and Senior Notes immediately. Instead, the Company filed its Annual Report on Form 10-K for the year ended December 31, 2009 (the "2009 Form 10-K"), which was signed by each Individual Defendant, without disclosing the affect of the Bank Loan on the China Natural Gas' liabilities.

On May 7, 2010, the Company filed its Quarterly Report on Form 10-Q for the quarter ended March 31, 2010 ("March 2010 Form 10-Q"). This report was signed by defendant Ji and She. Again, the Company did not disclose or properly account for the Bank Loan.

On August 13, 2010, after the close of the market, the Company filed its Quarterly Report on Form 10-Q for the quarter ended June 30, 2010 ("2010 June 10-Q"). In its 2010 June 10-Q, the Company disclosed that management had identified various deficiencies in the Company's internal financial and disclosure controls. In its 2010 June 10-Q, the Company also revealed: (a) that it failed to disclose the Bank Loan in the Company's 2009 Form 10-K; (b) it understated its restricted cash in the amount of $17.7 million and did not report the Bank Loan in its consolidated balance sheet as of March 31, 2010; and (c) did not properly reclassify long terms liability as short term liabilities for the senior notes payable and fair value of the redeemable warrants in the amount of $45.6 million in its consolidated balance sheet as of March 31, 2010.

On August 19, 2010, the Company filed a Form 8-K with the SEC, which revealed that the Board of Directors (the "Board") of China Natural Gas determined that the 2009 Form 10-K and the March 2010 Form 10-Q could no longer be relied upon because of errors in the financial statements. The next day the Company restated its annual consolidated financial statements as of December 31, 2009, and amended its March 2010 Form 10-Q. It was finally in this restatement that the Company reclassified the Senior Notes and the fair value of the Warrants from long term liabilities to short term liabilities. As a result, the Company's total current liability reported for the year ending December 31, 2009, increased from $6.6 million to $44.8 million, an increase of over 700% in short term liabilities. The Company's total current liability for the period ending March 31, 2010 increased from $7.3 million to $52.9 million. On this news, the Company's

stock price fell from a closing price of $6.64 on August 13, 2010 to $5.29 per share on August 24, 2010, a 20% drop.

## IV. ARGUMENT

### A. Mr. Crippa Satisfies the "Lead Plaintiff" Requirements of the Exchange Act and Should Be Appointed Lead Plaintiff

The PSLRA establishes the procedure that governs the appointment of a lead plaintiff in each private action arising under the Exchange Act that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(I)-(3)(B)(i).

First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(A)(i). Here, the relevant notice was published on *Business Wire* on September 2, 2010. *See* Declaration of Sean M. Brennecke in Support of Richard Crippa's Motion for Appointment as Lead Plaintiff and Approval of Selection of Counsel ("Brennecke Decl."), Ex. A. Within 60 days after publication of the notice, any "person" or "group of persons" who are members of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within 90 days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members. *See* 15 U.S.C. §78u-4(a)(3)(B). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the most adequate plaintiff in any private action arising under this Act is:

> the person or group of persons that-
>
> (aa) has either filed the complaint or made a motion in response to a notice ... ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §78u-4(a)(3)(B)(iii).

### 1. Mr. Crippa Has Timely Moved for Appointment as Lead Plaintiff

All class members who are interested in moving for the appointment of lead plaintiff in this matter must do so by October 25, 2010. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, Mr. Crippa timely hereby moves this Court to be appointed lead plaintiff on behalf of all members of the class. Mr. Crippa has also duly signed and filed a certification stating his willingness to serve as a representative party on behalf of the class. *See* Brennecke Decl., Ex. B.

### 2. Mr. Crippa Has the Requisite Financial Interest in the Relief Sought by the Class

During the Class Period, Mr. Crippa suffered losses of over $16,000 based on his Class Period purchases of China Natural Gas stock. *Id.* To Mr. Crippa's knowledge, his financial interest in this matter is the largest of any competing lead plaintiff movant. As a result, Mr. Crippa should be appointed lead plaintiff. *See* 15 U.S.C. §78u-4(a)(3)(B).

### 3. Mr. Crippa Satisfies the Requirements of Rule 23

According to 15 U.S.C. §78u-4(a)(3)(B)(iii), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a

party may serve as a class representative only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until a class certification motion is filed. *See In re E.spire Commc'ns, Inc., Sec. Litig.*, 231 F.R.D. 207, 214 (D. Md. 2000).

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See City of Roseville Employees Ret. Sys. v. Horizon Lines, Inc.,* No. 08-969, 2009 WL 1811067, at *2 (D. Del. June 18, 2009). Typicality does not require that there be no factual differences between the class representatives and the class members; rather, the question is "whether the circumstances of the movant, or the legal theory upon which the movant bases its claims, 'are markedly different' from those of the other class members." *Id.* (citation omitted).

Mr. Crippa satisfies the typicality requirement of Rule 23 because, just like all other class members, he: (1) purchased China Natural Gas securities during the Class Period at artificially inflated prices; and (2) suffered damages thereby. Thus, Mr. Crippa's claims are typical of those of other class members because his claims and the claims of other class members arise out of the same course of events. *Id.*

Under Rule 23(a)(4), the representative party must also "fairly and adequately protect the interests of the class." When considering adequacy, courts assess "whether the movant has the ability and incentive to vigorously represent the class claims, whether it has obtained adequate counsel, and whether there is any conflict between the movant's claims and the claims it asserts on behalf of the class." *Horizon Lines*, 2009 WL 1811067, at *2.

Here, Mr. Crippa is an adequate class representative because his interest in aggressively pursuing the claims against defendants is clearly aligned with the interests of the members of the class, who were similarly harmed as a result of defendants' false and misleading statements to the market. There is no antagonism between Mr. Crippa's interests and those of the other members of the class.

Finally, and as demonstrated below, Mr. Crippa's proposed counsel is qualified, experienced and able to conduct this complex litigation in an efficient, effective and professional manner. Thus, Mr. Crippa satisfies Rule 23's typicality and adequacy requirements for the purposes of this Motion.

### B.  Mr. Crippa's Selection of Lead and Liaison Counsel Should Be Approved

Pursuant to 15 U.S.C. §78u-4(a)(3)(B)(v), the lead plaintiff shall, subject to court approval, select and retain counsel to represent the class it seeks to represent. In that regard, Mr. Crippa, as the presumptively most adequate plaintiff, has selected Robbins Umeda to serve as lead counsel for the class. Robbins Umeda possesses substantial shareholder litigation experience, including the successful prosecution of securities fraud class action on behalf of injured investors. *See* Brennecke Decl., Ex. C. BMF has served as liaison counsel in numerous securities and complex class actions, and is capable of doing so here. *See generally Horizon*

*Lines*, 2009 WL 1811067, at *3. As a result, the Court should approve Mr. Crippa's selection of Robbins Umeda as lead counsel and BMF as liaison counsel for the class.

## V. CONCLUSION

For the foregoing reasons, the Court should appoint Mr. Crippa as Lead Plaintiff and approve his selection of Robbins Umeda as Lead Counsel and BMF as Liaison Counsel for the class.

Dated: October 25, 2010

BOUCHARD MARGULES & FRIEDLANDER PA.

/s/ Sean M. Brennecke
Joel Friedlander (#3163)
Sean M. Brennecke (#4686)
222 Delaware Avenue, Suite 1400
Wilmington, DE 19801
Telephone: (302) 573-3500
Facsimile: (302) 573-3501
jfriedlander@bmf-law.com
sbrennecke@bmf-law.com

*[Proposed Liaison Counsel]*

ROBBINS UMEDA LLP
Brian J. Robbins
Craig W. Smith
600 B Street, Suite 1900
San Diego, CA 92010
Telephone: (619) 525-3990
Facsimile: (619) 525-3991
brobbins@robbinsumeda.com
csmith@robbinsumeda.com

*[Proposed] Lead Counsel*