# EXHIBIT 5

# RIGRODSKY & LONG, P.A.

Attorneys at Law                                                                 www.rigrodskylong.com

---

Seth D. Rigrodsky                                                                                Timothy J. MacFall
Admitted in DE, NY                                                                                Admitted in NY

Brian D. Long                                                                                    Marc A. Rigrodsky
Admitted in DE, PA                                                                               Admitted in CT, DC

## FIRM RESUME

### THE FIRM

Rigrodsky & Long, P.A. (the "Firm"), is a law firm specializing in the representation of institutional and individual shareholders in corporate and securities class action litigation, in addition to shareholder derivative and consumer fraud litigation. The Firm's offices are located in Wilmington, Delaware, and Garden City, New York. The Firm regularly practices before the Delaware Court of Chancery and in state and federal courts located throughout the United States. The Firm's attorneys have decades of progressive and responsible experience conducting both complex corporate and class action litigation.

The mission of the Firm is to provide legal services of the highest quality to investors of both private and publicly-traded corporations in litigation involving corporate governance, shareholder rights, violations of federal and state securities laws, and consumer rights laws, through the dedicated efforts of a team of highly skilled professionals working together and drawing upon significant expertise and practical experience.

### THE FIRM'S ATTORNEYS

*Seth D. Rigrodsky,* a shareholder in the Firm, has over eighteen years of legal experience. Mr. Rigrodsky is a *magna cum laude* graduate of both Brandeis University and the Georgetown University Law Center. While at Georgetown, he served as Articles Editor of the *Georgetown Law Review.* Mr. Rigrodsky began his legal career as a law clerk to the Honorable Andrew G.T. Moore, II, of the Delaware Supreme Court. Following his clerkship, Mr. Rigrodsky was associated with the law firms of Wachtell, Lipton, Rosen & Katz in New York City, and Morris, Nichols, Arsht & Tunnell in Wilmington, Delaware, where he concentrated his practice on corporate and complex business litigation. In 1994, Mr. Rigrodsky joined Morris and Morris in Wilmington, Delaware, where he became a partner beginning in January 2000, and represented investors in numerous federal and state class and shareholder lawsuits. Mr. Rigrodsky joined the law firm Milberg LLP in 2001 and founded its Delaware office. Mr. Rigrodsky is a member of the bars of the States of Delaware and New York, the United States District Courts for Delaware and the Southern District of New York, and the United States Courts of Appeals for the Second, Third, and Fourth Circuits.

---

*Brian D. Long,* a shareholder in the Firm, has over ten years of experience representing plaintiffs in complex class action litigation in state and federal courts throughout the nation. Mr. Long is a graduate of Franklin & Marshall College in Lancaster, Pennsylvania, and of the Duquesne University School of Law in Pittsburgh, Pennsylvania. Upon graduation from law school, Mr. Long was associated with the firm of Roda & Nast, P.C., also in Lancaster, where he litigated mass tort, consumer fraud, and antitrust class action litigation. After three years at Roda & Nast, Mr. Long moved to the Wilmington, Delaware office of Chimicles & Tikellis, LLP. While at the Chimicles firm, Mr. Long focused his practice on litigating both transactional and shareholder derivative cases in the Delaware Court of Chancery. In addition to litigating that firm's proprietary cases, Mr. Long also gained valuable experience serving as local counsel to out-of-town firms. In March of 2005, Mr. Long moved to the Wilmington office of Milberg LLP, where he represented both institutional and individual investors in complex corporate litigation. Mr. Long became a shareholder of the Firm upon its founding in August 2006. Mr. Long is admitted to practice before the bars of the State of Delaware and the Commonwealth of Pennsylvania. He also is admitted to practice in the United States Court of Appeals for the Third Circuit and the United States District Courts for the Eastern and Western Districts of Pennsylvania and the District of Delaware.

*Timothy J. MacFall,* has more than twenty three years of legal experience. Mr. MacFall is a *cum laude* graduate of Brooklyn College of the City University of New York and a graduate of Brooklyn Law School. Upon his graduation from law school, Mr. MacFall served as an Assistant District Attorney in the Narcotics Bureau of the Kings County District Attorney's Office. In 1987, he joined the Immigration & Naturalization Service as a Trial Attorney in the Alien Criminal Apprehension Program. Mr. MacFall was subsequently cross-designated as a Special Assistant United States Attorney for the Eastern District of New York, Criminal Division. In 1988, Mr. MacFall was appointed as a Special Assistant United States Attorney in the Civil Division of the United States Attorney's Office for the Southern District of New York. As a government attorney, Mr. MacFall tried numerous cases to verdict and argued more than a dozen cases before the United States Court of Appeals for the Second Circuit. Mr. MacFall has focused his practice primarily on complex class action litigation in state and federal courts since 1992, when he became associated with the firm Harwood Feffer. Mr. MacFall was subsequently associated with the Law Offices of Curtis V. Trinko, LLP, where he became a partner in 1994. In 2000, Mr. MacFall became of counsel to Bernstein Liebhard LLP. He became a partner at Bernstein Liebhard LLP in 2005, representing individual investors, union pension funds, and state pension funds in transactional and federal securities class actions. Mr. MacFall joined Rigrodsky & Long, P.A. in April 2009. Mr. MacFall is a member of the bar of the State of New York and is also admitted to practice in the United States District Courts for the Southern and Eastern Districts of New York, the District of Colorado, and the United States Court of Appeals for the Second Circuit.

*Marc A. Rigrodsky,* Of Counsel to the Firm, has twenty-six years of legal experience. Mr. Rigrodsky is a graduate of Cornell University and a *summa cum laude* graduate of the Benjamin N. Cardozo School of Law.  While at Cardozo, he served on the *Cardozo Law Review*.  Mr. Rigrodsky began his legal career as a law clerk to the Honorable Thomas J. Meskill, of the United States Court of Appeals for the Second Circuit.  Following his clerkship, Mr. Rigrodsky was associated with the law firm of Robinson & Cole in Hartford, Connecticut.  He worked for the Department of the Navy from 1986-1988, the Department of the Treasury from 1992-2003, and the Department of Transportation from 2003-2007.  He was part of Digital Equipment Corporation's law department from 1989-1991, and worked as a full-time consultant for the District of Columbia Retirement Board from 2007-2009.  Mr. Rigrodsky is a member of the bars of the State of Connecticut, the District of Columbia and is also admitted to practice before the United States District Court for the District of Connecticut and the United States Supreme Court.

SELECT FIRM ACCOMPLISHMENTS

*In re Lear Corp. S'holders Litig.,*
**Cons. C.A. No. 2728-VCS (Del. Ch.)**

The Firm served as co-chair of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of Lear Corporation ("Lear" or the "Company") in connection with its sale to American Real Estate Partners, L.P. ("AREP").  The Firm represented Classic Fund Management AG (Lear's sixth largest holder) who, along with other significant shareholders, had expressed their concern regarding the price AREP offered to acquire Lear.  Despite the opposition voiced by its major institutional shareholders, Lear entered into a merger agreement with AREP, wherein the sale process was tilted in favor of AREP.  Among other things, Lear could not terminate the merger agreement without first providing the other bidder's terms to AREP and AREP had the right to top any other offer.  As a result, plaintiffs alleged that no rival bidder was likely to emerge.  Moreover, plaintiffs believed that the Company's intrinsic value was more than the $36 per share offered by AREP.  After the Court consolidated the Lear actions in February 2007, the Firm obtained a Preliminary Injunction, which prohibited a stockholder vote on the merger until Lear made additional disclosures.  *(In re Lear Corp. S'holders Litig.,* **926 A.2d 94 (Del. Ch. 2008))**.  As a result of the Firm's efforts, Lear made substantial and remedial disclosures in its June 18, 2007 Proxy supplement, which allowed stockholders to consequentially reject the merger in July 2007.  In March 2008, after the shareholders rejected the proposed merger, the Court dismissed the class action as moot.

*In re The Topps Co., Inc. S'holders Litig.,*
**Cons. C.A. No. 2786-VCS (Del. Ch.)**

The Firm served as co-lead counsel for plaintiffs in this class action brought on behalf of the public shareholders of The Topps Company, Inc. ("Topps" or the "Company") in connection with its sale to Madison Dearborn Partners and Michael Eisner's The Tornante Company, LLC (collectively, "Tornante").  Plaintiffs alleged that the transaction lacked many of the hallmarks of financial fairness and that the price was unfair and achieved through a process designed to benefit Tornante, to the detriment of Topps' public shareholders.  The Firm moved the Court to issue a preliminary injunction to stop the deal.  In June 2007, the Court issued a landmark decision granting plaintiffs' injunction motion.  **(*In re The Topps Co., Inc. S'holders Litig.*, 926 A.2d 58 (Del. Ch. 2007))**.  The Court enjoined the merger vote until after Topps granted the competing bidder The Upper Deck Company ("Upper Deck") a waiver of the standstill agreement to make a tender offer, and allowed Upper Deck to communicate with Topps' stockholders about its bid and its version of events.

*Manville Personal Injury Trust v. Blankenship,*
**C.A. No. 07-C-1333 (W. Va.)**

The Firm served as counsel for plaintiff in this shareholder derivative action brought on behalf of Massey Energy Company ("Massey" or the "Company") against its board of directors and certain of its officers for breach of fiduciary duties arising out of the defendants' alleged conscious failures to cause Massey to comply with applicable environmental and worker-safety laws and regulations.  Plaintiff argued that defendants caused severe injury to the Company by consciously ignoring Massey's legal obligations to comply with federal and state law, thereby exposing the Company to a substantial threat of monetary liability for violations.  This litigation, filed in the Circuit Court of Kanawha County, West Virginia, caused Massey to implement significant corporate reforms, including improvements to its corporate policies.  The parties reached a settlement that, among other things, required Massey to: (i) implement limitations on the length of service of and enhanced membership and meeting attendance requirements for members of the Safety, Environmental and Public Policy Committee ("SEPPC") of the board of directors; (ii) grant the SEPPC authority to retain independent, outside consultants to assist it with its duties; (iii) require that the SEPPC recommend enhancements to the Company's safety and environmental procedures and reporting, including shareholder reporting; (iv) establish certain safety and environmental compliance oversight positions; and (v) implement enhanced employee reporting mechanisms for safety and environmental issues. In June 2008, the Circuit Court approved the settlement.  *Manville Personal Injury Trust v. Blankenship,* **C.A. No. 07-C-1333 (W. Va. Jun. 30, 2008) (Order)**.

*In re Chiquita Brands Int'l, Inc.,*
**C.A. No. 08-01916-MD (S.D. Fla.)**

The Firm serves as counsel for plaintiff City of Philadelphia Public Employees' Retirement System in this shareholder derivative and class action brought on behalf of the public shareholders of Chiquita Brands International ("Chiquita" or the "Company"). Plaintiffs allege that the Company repeatedly and systematically violated federal law prohibiting transactions with recognized global terrorist organizations. Plaintiffs allege that these breaches of fiduciary duty, along with the resultant violations of federal law, have substantially injured the Company in that, among other things, the Company consented to a criminal guilty plea. In September 2008, counsel filed their Verified Consolidated Shareholder Derivative Complaint.

*City of Tallahassee Retirement System v. Akerson,*
**Index No. 601535/2008 (N.Y. Supr. Ct.)**

Rigrodsky & Long serves as counsel for plaintiff City of Tallahassee Retirement System in this shareholder derivative action brought on behalf of the public shareholders of American Express Company ("American Express" or the "Company"). Plaintiff alleges that the Company through American Express Bank International ("AEBI") and American Express Travel Related Services Company, Inc. ("TRS") engaged in knowing, repeated, and systemic violations of criminal and regulatory laws and regulations governing bank secrecy and anti-money laundering ("AML") activities. As a consequence, AEBI and TRS became vehicles for the laundering of millions upon millions of dollars in the cash proceeds of illegal narcotics transactions. After federal and state law enforcement authorities uncovered the serious and knowing control failures, AEBI and TRS entered into settlement agreements with authorities that included the filing of deferred criminal charges against AEBI and the payment of tens of millions of dollars in fines.

*County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,*
**C.A. No. 4066-VCN (Del. Ch.)**

The Firm serves as lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Merrill Lynch & Co. ("Merrill") in connection with its sale to Bank of America Corporation ("BofA"). Plaintiff County of York Employees Retirement Plan alleged that the individual defendants hastily agreed to sell the Company over the course of a weekend without adequately informing themselves of the true value of the Company or the feasibility of securing a viable alternative transaction that would be more beneficial to shareholders than the Proposed Acquisition. On October 28, 2008, the Delaware Court granted, in part, plaintiff's motion to expedite discovery and denied defendants' motion to stay or dismiss. **(*County of York Employees Ret. Plan v. Merrill Lynch & Co., Inc.,* C.A. No. 4066-VCN, 2008 Del. Ch. LEXIS 162 (Del. Ch. Oct. 28, 2008)).** Subsequently, the Firm engaged in expedited discovery. After engaging in arm's-length negotiations, the parties reached a settlement whereby defendants' made

additional, substantive disclosures in their Definitive Proxy. Thereafter, the shareholders of Merrill and BofA approved the merger.

*In re Nat'l City Co. S'holders Litig.*,
**C.A. No. 4123-CC (Del. Ch.)**

The Firm serves as lead counsel for plaintiffs in this class action brought on behalf of the public shareholders of National City Corporation, ("National City" or the "Company") in connection with its sale to The PNC Financial Services Group, Inc. ("PNC"). Plaintiffs allege that the individual defendants breached their fiduciary duties by: (i) agreeing to sell National City without first taking steps to ensure that plaintiffs and class members would obtain adequate, fair and maximum consideration under the circumstances; (ii) engineering the Proposed Acquisition to benefit themselves and/or PNC without regard for National City's public shareholders; (iii) failing to disclose all material information necessary to enable shareholders to cast an informed vote on the Proposed Acquisition, such as a recent change in the tax laws which would allow PNC to enjoy a tax benefit of approximately $5.1 billion as a direct result of the acquisition of National City, essentially paying for the Proposed Acquisition; and (iv) agreeing to deal terms that unreasonably hinder the possibility of a superior priced offer emerging for the Company. Following the consolidation of related actions, plaintiffs engaged in expedited discovery. Subsequently, the National City and PNC shareholders approved the merger.

*David B. Shaev IRA v. Sidhu*,
**No. 00983, November Term 2005 (Phila. C.C.P., Commerce Div.)**

The Firm served as co-lead counsel in this shareholder derivative and class action brought on behalf of the public shareholders of Sovereign Bancorp, Inc. ("Sovereign"). Sovereign completed its two-part transaction (the "Santander Transaction") whereby Sovereign sold 19.8% of the Company to Banco Santander Central Hispano, S.A., and used the proceeds to fund its acquisition of Independence Community Bancorp. Plaintiffs alleged that Sovereign's board of directors purposely structured the Santander Transaction to be below the 20% change in control threshold established by the New York Stock Exchange. Additionally, plaintiffs alleged the board had improper motives of entrenchment and participated in protection of their own self interests and the improper subversion of a Proxy contest launched by Sovereign's largest shareholder, Relational Investors, LLC. Following the close of the sale in May 2006, the Firm helped negotiate a settlement of the litigation, which conferred substantial benefits on the Company and Class Members, including substantial corporate governance changes adopted by the Company. The Court approved the settlement. *David B. Shaev IRA v. Sidhu,* **No. 00983 (Phila C.P., Commerce Div. Oct. 28, 2008) (Order).**

*In re Everlast Worldwide Inc. S'holders Litig.,*
**Cons. C.A. No. 3077-VCL (Del. Ch.)**

The Firm served as co-lead counsel in this class action brought on behalf of the public shareholders of Everlast Worldwide Inc. ("Everlast" or the "Company") in connection with its sale to Sports Direct International, Plc and Brands Holdings Limited. Plaintiffs alleged that the merger consideration was unfair in a number of respects, including the absence of shareholders' ability to participate in any "upside" in the Company's future financial performance, a factor which plaintiffs alleged made the merger less advantageous to the Company's shareholders than a competing acquisition offer that had been made to the Company. As result of the Firm's negotiations with defendants, the parties reached a settlement by which Everlast agreed to and made additional, curative disclosures in its proxy statements regarding the process by which the Company's board of directors elected to pursue the merger. The Court approved the settlement. *In re Everlast Worldwide Inc. S'holders Litig.,* **Cons. C.A. No. 3077-VCL (Del. Ch. Dec. 20, 2007) (Order).**

*Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,*
**C.A. No. 2683-N (Del. Ch.)**

The Firm served as counsel for lead plaintiff Helaba Invest Kapitalanlagegsellschaft mbH (a European institutional investor) in this class action on behalf of the public shareholders of National Home Health Care Corp. ("National Home" or the "Company"). The litigation sought to enjoin the proposed acquisition of National Home by a consortium composed of Angelo, Gordon & Co. and Eureka Capital Partners ("Angelo Gordon") for inadequate consideration. The plaintiff alleged that certain defendants, who collectively held more than fifty percent of the National Home's outstanding stock, agreed to vote in favor of the deal and that certain of these defendants would receive benefits from National Home and Angelo Gordon not shared by the National Home's minority, public shareholders. As a result of the Firm's negotiations with defendants, the parties reached a settlement by which additional, curative disclosures were made in National Home's amended proxy statements and after holding meetings with the Company's special committee and board of directors, Angelo Gordon agreed to pay an additional $1.35 per share, a financial benefit of more than $3.76 million to National Home's shareholders. In addition, even after the Merger Agreement was approved, the Firm continued to advocate on behalf of shareholders, and Gordon agreed to allow the Company to increase its next quarterly dividend, representing approximately $260,000 in additional value. The Court approved the settlement. *Helaba Invest Kapitalanlagegsellschaft mbH v. Fialkow,* **C.A. No. 2683-N (Del. Ch. Mar. 12, 2008) (Order).**

*In re Jacuzzi Brands, Inc. S'holders Litig.,*
**Cons. C.A. No. 2477-CC (Del. Ch.)**

The Firm served as co-chair of plaintiffs' Executive Committee on behalf of the public shareholders of Jacuzzi Brands, Inc. ("Jacuzzi"). Among other things, plaintiffs alleged that the acquisition of Jacuzzi by Apollo Management VI, L.P. was for inadequate consideration and through coercive means. After extensive investigation and discussions with defendants, the Firm negotiated a significant settlement including additional disclosures made by Jacuzzi in its Definitive Proxy Statement and amendments to the Merger Agreement challenged in the case. The Court approved the settlement. *In re Jacuzzi Brands, Inc. S'holders Litig.,* **Cons. C.A. No. 2477-CC (Del. Ch. Jun. 26, 2007) (Order).**

*Mandell v. Ablest, Inc.,*
**C.A. No. 2958-VCN (Del. Ch.)**

The Firm served as co-lead counsel in this class action brought on behalf of the public shareholders of Ablest, Inc. ("Ablest" or the "Company") in connection with its sale to Koosharem Corporation. Plaintiffs alleged that the merger consideration paid to class members was unconscionable, unfair and grossly inadequate because, among other things, the consideration agreed upon did not result from an appropriate consideration or attempt to ascertain the true value of the Company through an open bidding or auction mechanism. As result of the Firm's negotiations with defendants, Ablest agreed to supplement its proxy statement with additional disclosures regarding the sale process to its shareholders, including terms of the fee agreement and financial projections used in conjunction with the merger. The Court approved the settlement. *Mandell v. Ablest, Inc.,* **C.A. No. 2958-VCN (Del. Ch. Dec. 18, 2007) (Order).**

*Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,*
**C.A. No. 3476 (GEL) (S.D.N.Y.)**

The Firm served as co-lead counsel for plaintiff in this class action brought on behalf of the public shareholders of Converium Holding AG ("Converium" or the "Company") and holders of the Company's American Depository Shares against SCOR S.A. ("SCOR") and Patinex AG ("Patinex") in connection with SCOR and Patinex's acquisition of Converium. Plaintiff alleged that the acquisition was unfair to the Class. As a result of the Firm's action, SCOR agreed to settle the litigation by increasing its offer price by 7.9%, or $259.6 million. Citing the efforts of plaintiff's counsel, the Court approved the settlement. *Neil L. Sclater-Booth v. SCOR S.A. and Patinex AG,* **C.A. No. 3476 (GEL) (S.D.N.Y. Feb. 8, 2008) (Order).**

*Norfolk County Retirement System v. Jos. A. Bank Clothiers, Inc.,*
**C.A. No. 3443-VCP (Del. Ch.)**

Rigrodsky & Long serves as counsel for plaintiff Norfolk County Retirement System in this action against Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank" or the "Company") seeking relief under 8 *Del. C.* § 220 to Compel Inspection of the Company's books and records. Plaintiff demanded inspection of the Company's books and records in connection with the events, circumstances, and transactions underlying the Company's issuance of, beginning in December 2005 and through June 2006, a series of statements which allegedly omitted the Company's knowledge of excessive levels of inventory of the Company's Fall/Winter 2005 clothing line. These statements falsely reassured Jos. A. Bank's investors that its gross profit margins would increase substantially throughout the final two quarters of fiscal 2005 and into the first quarter of fiscal 2006. As a result of the Company's concealment and upon the revelation of the Company's true financial condition, Jos. A. Bank's stock plummeted 29% by the close of trading on June 8, 2006.

*Plymouth Co. Ret. Sys. v. MacDermid, Inc.,*
**C.A. No. 2006CV9741 (Colo. Dist. Ct. - Denver Co.)**

The Firm served as co-lead counsel on behalf of lead plaintiff Plymouth County Retirement System and the class of MacDermid, Inc. ("MacDermid" or the "Company") shareholders. This case was a class action arising from the proposed acquisition of MacDermid by Daniel H. Leever (the Company's Chairman and Chief Executive), Court Square Capital Partners II, L.P., and Weston Presidio V, L.P. Among other things, plaintiff alleged that the Company's proxy did not disclose that the directors who approved the proposed transaction would receive more than $17 million for certain options, the amount or value that certain directors would be able to invest after completion of the proposed transaction, and certain facts and assumptions underlying the Fairness Opinion. As a result of the Firm's negotiations with defendants, MacDermid made additional disclosures in its Definitive Proxy Statement, including but not limited to, the compensation and involvement of key company insiders, information regarding competing bidders and financial analysis by Merrill Lynch. The Court approved the settlement. *Plymouth Co. Ret. Sys. v. MacDermid, Inc.,* **C.A. No. 2006CV9741 (Colo. Dist. Ct. – Denver Co. Dec. 10, 2007) (Order).**

*Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.,*
**C.A. No. 3261-VCN (Del. Ch.)**

The Firm served as co-counsel for plaintiff in this class action brought on behalf of the public shareholders of Washington Group International, Inc. ("Washington Group" or the "Company") in connection with its sale to URS Corporation. Plaintiff alleged that the transaction was financially and procedurally unfair to Washington Group's shareholders. In addition, plaintiff alleged that the Company's Definitive Proxy Statement was materially misleading because, among other things, it failed to explain

9

why Washington Group used overly conservative financial projections to support the Fairness Opinion issued in connection with the transactions. As result of the Firm's negotiations with defendants, Washington Group agreed to and made additional curative disclosures in the Definitive Proxy Statement. Specifically, the Company agreed to disclose additional information concerning the potential impact of existing contract claims asserted by the Company and their impact on the Company's valuation, the Company's efforts to solicit potential acquirers, and the analyses performed by Goldman Sachs (the Company's financial advisor) in support of the Merger, among other things. Additionally, Washington Group amended the Merger Agreement whereby it increased the amount of consideration paid to each Washington Group shareholder. The Court approved the settlement. *Schultze Asset Mgmt. LLC v. Washington Group Int'l, Inc.,* **C.A. No. 3261-VCN (Del. Ch. May 22, 2008) (Order).**

*In re Am. Pharmaceutical Partners, Inc. S'holders Litig.,*
**Cons. C.A. No. 1823-VCL (Del. Ch.)**

The Firm served as a member of plaintiffs' Executive Committee in this class action brought on behalf of the public shareholders of American Pharmaceutical Partners, Inc. ("APP" or the "Company") in connection with its acquisition of American BioScience, Inc. Plaintiffs alleged that the acquisition would have diluted the voting rights of each share of the Company, to the detriment of minority shareholders. Plaintiffs also asserted claims derivatively on behalf of the Company, which was directly harmed, among other things, when the Company's investors fled *en masse* upon announcement of the merger, and because the merger transferred the bulk of the Company's value to defendant Dr. Patrick Soon-Shiong for allegedly inadequate consideration. In April 2006, the merger was completed and subsequently plaintiffs filed their First Consolidated Class Action Complaint in June 2006. After nearly 18 months of arm's-length negotiations and the production of thousands of pages in documents in response to plaintiffs' subpoenas, the parties agreed to mediation and an agreement-in-principle to settle the action. In July 2008, the parties agreed to settle the action for $14.3 million, to be paid by defendants, which represents approximately $0.60 per damaged minority share for the shareholders. The Court approved the settlement. *In re Am. Pharmaceutical Partners, Inc. S'holders Litig.,* **Cons. C.A. No. 1823-VCL (Del. Ch. Dec. 16, 2008) (Order).**

*Sheetmetal Workers' Nat'l Pension Fund v. Hill,*
**C.A. No. 07-cv-2269 (RBK) (D.N.J.)**

The Firm served as counsel for plaintiff Sheetmetal Workers' National Pension Fund in this consolidated shareholder derivative and class action brought on behalf of the public shareholders of Commerce Bancorp, Inc. ("Commerce" or the "Company") in connection with two regulatory investigations of Commerce and its subsequent acquisition by PNC Bank in a merger transaction (the "Merger"). Plaintiff alleged that the members of the board of directors of Commerce violated their fiduciary duties to the Company by approving a course of conduct whereby Commerce made unsafe loans

and engaged in questionable related party transactions with its officers and directors and that the price offered in the Merger was unfair. Sheetmetal requested the Court to issue an injunction to stop the Merger and sought expedited discovery. After extensive discovery, the Firm helped negotiate a settlement, which obtained a $77 million reduction in the termination fee, and numerous additional disclosures in the Definitive Proxy Statement. The Court approved the settlement. *Sheetmetal Workers' Nat'l Pension Fund v. Hill,* **C.A. No. 07-cv-269 (D.N.J. May 9, 2008) (Order).**

*Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez,*
**C.A. No. 3976-VCS (Del. Ch.)**

The Firm served as counsel for plaintiff in this derivative and class action brought on behalf of the public shareholders of UnionBanCal Corporation ("UnionBanCal" or the "Company") against its Board of Directors and certain officers for breach of fiduciary duties arising from the defendants' repeated and systematic failure to implement anti-money laundering procedures and policies, in violation of federal laws including the Bank Secrecy Act. The class action claims arose in connection with a tender offer launched by Mitsubishi UFJ Financial Group ("MUFG") and Bank of Tokyo-UFJ Ltd. Plaintiff Virgin Islands Government Employees' Retirement System alleged that the merger consideration was unfair in a number of respects, including the fact that the Company's share price was substantially depressed as a result of defendants' egregious failures to comply with anti-money laundering laws and regulations. The Firm coordinated efforts with a similar litigation in California, reviewing document production, deposing key witnesses, and negotiating a settlement in which UnionBanCal agreed to and made additional material disclosures concerning the transaction. The Court approved the settlement. *Virgin Islands Gov. Employees' Ret. Sys. v. Alvarez,* **C.A. No. 3976-VCS (Del. Ch. Dec. 2, 2008) (Order)).**

*Wilkenfeld v. Knowles,*
**Docket No. L 06445-06 (N.J. Super. Ct. Law Div.)**

The Firm serves as Court-appointed chair of plaintiffs' committee on behalf of Metrologic, Inc. ("Metrologic" or the "Company") shareholders. This case is a class action that arose from the transaction to cash out the Company's minority shareholders in a merger for alleged inadequate consideration, negotiated through coercive means. Plaintiffs allege that the board of directors unanimously approved Metrologic's acquisition by entities owned and affiliated with Francisco Partners II, L.P., C. Harry Knowles (the Company's founder and Chairman of the Board), Elliott Associates, L.P. and Elliott International, L.P. ("Elliott"). C. Harry Knowles and Elliott (the "Knowles Group") are together controlling shareholders of Metrologic. The Knowles Group entered into voting agreements to vote their 49% in favor of the deal in addition to an undisclosed group of the Company's directors and executive officers that agreed to vote their 1.1% in favor of the deal. Therefore, 50.1% of the shares were contractually committed to voting in favor of the transaction. Furthermore, the proxy allegedly failed

to disclose that even though the Knowles Group was receiving the same consideration for their shares being cashed out, they were also receiving additional consideration for the shares that they rolled over for equity in the surviving entity. This case is currently in the discovery stage.

*In re Wind River Systems, Inc. S'holder Litig.,*
**Consol. C.A. No. 4674-VCP (Del. Ch.)**

Rigrodsky & Long served as lead counsel for the Delaware plaintiffs in this class action brought on behalf of the public shareholders of Wind River Systems, Inc. ("Wind River" or the "Company") in connection with its sale to Intel Corporation ("Intel"). Plaintiffs alleged that the consideration to be paid to plaintiffs and the Class was unfair and grossly inadequate because, among other things, the intrinsic value of Wind River is materially in excess of the amount offered in the transaction, giving due consideration to the Company's anticipated operating results, net asset value, cash flow profitability and established markets and that Intel aided and abetted Wind River's board of directors' breaches of fiduciary duty. Plaintiffs also alleged that the Company's Solicitation/Recommendation Statement filed with the United States Securities and Exchange Commission ("SEC") on Form SC 14D-9 on June 11, 2009 (the "14D-9") and in Intel's Tender Offer Statement filed with the SEC on Form SC TO-T on June 11, 2009 contained materially incomplete and misleading disclosures concerning the transaction. The Firm immediately moved the Court for a Preliminary Injunction to stop the transaction and for Expedited Discovery. Defendants countered by filing a motion to Stay and/or Dismiss the Delaware actions in favor of the earlier filed California actions. Plaintiffs responded by arguing that a *forum non conveniens* analysis should apply because the Delaware action was filed in relatively the same time period as the California actions. The Court held that there was no prejudicial delay because the California actions had not progressed far beyond the Delaware actions, and granted plaintiffs' motion for expedited discovery and set a date for a preliminary injunction hearing. Moreover, Vice Chancellor Parsons noted that in light of the events from the announcement of the merger to the filing of the 14D-9, plaintiffs' delay was minimal and in line with the Court's "long expressed . . . 'public policy interest favoring the submission of thoughtful, well-researched complaints – rather than ones regurgitating the morning's financial press.'" *In re Wind River Systems, Inc. S'holder Litig.,* **Consol. C.A. No. 4674-VCP (Del. Ch. June 26, 2009) (Slip. Op.).** As a result of the Firm's negotiations with defendants, the parties ultimately reached a settlement whereby Wind River agreed to make additional, corrective disclosures in its 14D-9 regarding the process surrounding and the details by which the Company pursued the merger.

*In re Wyeth S'holders Litig.,*
**Consol. C.A. No. 4329-VCN (Del. Ch.)**

Rigrodsky & Long served as Co-Lead Counsel for plaintiffs in this class action brought on behalf of the public shareholders of Wyeth ("Wyeth" or the "Company") in

connection with its sale to Pfizer, Inc. ("Pfizer").  Plaintiffs alleged that Wyeth's board of directors breached their fiduciary duties of loyalty, good faith, due care, and full and fair disclosure to Wyeth's shareholders by: (a) agreeing to sell Wyeth without first taking steps to ensure that plaintiffs and Class members would obtain adequate, fair, and maximum consideration under the circumstances; (b) soliciting shareholder approval for the transaction through defective, incomplete and/or misleading proxy materials; (c) failing to fully disclose facts about other higher offers to buy Wyeth, and other material information; (d) approving an excessively high termination fee should Wyeth terminate the merger; (e) failing to obtain a higher price for Wyeth shares, even though the shares should command a "scarcity premium;" and (f) failing to obtain any downside protection in the form of a floor or collar in the event that the value of Pfizer's stock declined prior to the consummation of the transaction.  Upon defendants' filing of their Joint Preliminary Proxy Statement and Registration Statement with the SEC on Form S-4 (the "S-4"), plaintiffs' immediately moved the Court for a Preliminary Injunction to stop the transaction and for expedited discovery.  Defendants sought to have the case proceed in a single jurisdiction, either Delaware or New Jersey.  The Delaware Court of Chancery ruled that the case should go forward in Delaware.  As a result of the Firm's negotiations with defendants, the parties reached a settlement whereby Wyeth and Pfizer agreed to make additional, corrective disclosures in its S-4 regarding the process surrounding and the details by which the Company pursued the merger.

*City of Taylor Gen. Employees Ret. Sys.  v. Taurel,*
**C.A. No. 08-1554 (E.D.N.Y.)**

The Firm serves as counsel for plaintiff in this shareholder derivative and class action brought on behalf of the public shareholders of Eli Lilly & Company ("Eli Lilly" or the "Company") in connection with the Company's alleged course of systemic and sustained misconduct that allowed the Company to market anti-psychotic medications for "off label" usage, which caused thousands of individuals to suffer horrific side effects, including the onset of diabetes.  Plaintiff alleges that Eli Lilly and the individual defendants knew of these risks, but ignored them to garner billions of dollars in illegitimate sales for the Company, thus violating their fiduciary duties to the Company and substantially injuring the Company.  In April 2008, the Firm filed a Verified Shareholder Derivative Complaint, and has since coordinated and consolidated with similar actions in Indiana.

*In re  MBNA Corp. Sec. Litig.,*
**Cons. C.A. No. 05-CV-00272 (GMS) (D. Del.)**

The Firm serves as liaison counsel for lead plaintiff and the members of the putative class in this securities class action brought on behalf of all persons who purchased or otherwise acquired the publicly traded securities of MBNA Corp. ("MBNA" or the "Company") during the period January 20, 2005 through April 20, 2005, inclusive (the

"Class Period"). Plaintiffs alleged that, (i) MBNA deceived the market by reporting that MBNA would achieve annual earnings growth of 10%; (ii) the Company failed to disclose that increases in interest rates, which had commenced before the Class Period and continued throughout, were driving down the proper carrying value of the Company's interest-rate only strips, such that the value of the Company's reported assets were materially overstated; and (iii) the Company did not adjust as appropriate the assumptions and estimates used in determining the fair value of the interest-only strip receivable. As result, on April 21, 2005, MBNA was forced to reveal that, (i) it had to take almost a $207 million write down of its interest-only strip receivable; (ii) its first quarter income was down 93% year-over-year, including the restructuring charge; and (iii) it expected full year earnings to be significantly below the 10% growth objective. On July 6, 2007, Chief Judge Gregory Sleet denied defendants' motion to dismiss the amended complaint. *Baker v. MBNA Corp.*, **Cons. C.A. No. 05-cv-00272 (GMS) (D. Del Jul. 6, 2007) (Mem. Op.).**

*In re Molson Coors Brewing Co. Sec. Litig.*,
**Cons. C.A. No. 05-CV-00294 (GMS) (D. Del.)**

The Firm serves as liaison counsel on behalf of lead plaintiffs Drywall Acoustic Lathing and Insulation Local 675 Pension Fund, Metzler Investment GmbH and the members of the putative class in this securities class action brought on behalf of all persons who are, (i) former shareholders of Molson Coors ("Molson Coors") as a result of the February 9, 2005 merger of Molson by and into Coors; (ii) open market purchasers of Coors common stock from July 22, 2004 through February 9, 2005; and (iii) open market purchasers of Molson Coors common stock, from the completion of the merger through April 27, 2005, inclusive. Plaintiffs allege that Molson Coors made false and misleading statements, including: (i) the cost saving synergies represented by Molson Coors were impossible to achieve because, among other things, Coors' rapidly increasing distribution costs would adversely effect the potential cost saving synergies; (ii) Molson and Coors were already distributing each other's products, further reducing the possibility of cost saving synergies; (iii) the merger would actually incur significant post-merger expenses due to the expected exodus of Coors senior executives who would be paid millions of dollars in benefits; and (iv) Molson Coors would inherit Molson's Brazilian operations, which were an unmitigated failure that eventually necessitated a $500 million post-merger charge and the sale of Molson's Brazilian interests at a fraction of their cost. After extensive litigation efforts in both the United States and Canadian actions, in February 2008, all parties conducted arm's-length negotiations with the assistance of the Honorable Nicholas H. Politan (Ret.), resulting in an agreement-in-principle to settle the lawsuits.