IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MAXWELL VANDEVELDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 10-728-SLR |
| | ) | |
| CHINA NATURAL GAS, INC., QINAN JI, | ) | |
| ZHIQIANG WANG, DONALD YANG, | ) | |
| DAVID SHE, CARL YEUNG, and | ) | |
| LAWRENCE LEIGHTON | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM ORDER**

At Wilmington this 29th day of June, 2011, having reviewed competing motions (respectively, the "Crippa motion" (D.I. 5) filed by Richard Crippa ("Crippa") and the "Skeway motion" (D.I. 8) filed by Robert Skeway ("Skeway")[1]) as well as the papers submitted in connection therewith, for appointment as lead plaintiff and approval of selection of lead counsel;

IT IS ORDERED that both motions are denied without prejudice, as follows.

1. **Background.** Before the court are two motions for appointment of lead plaintiff and approval of selection of lead counsel. Skeway filed the Skeway motion on October 25, 2010. (D.I. 8) Crippa filed the Crippa motion on October 26, 2010. (D.I. 5)

2. On August 26, 2010, plaintiff Maxwell Vandevelde, individually and on behalf of all others similarly situated (collectively, "plaintiffs"), instituted the present securities

---

[1] Skeway moves on behalf of both himself and his wife, Lisa Skeway. (D.I. 9 at 5 n.1) During the relevant time period, Skeway purchased China Natural Gas stock on behalf of himself and his wife and handled all investment decisions. (*Id.*) Skeway has had power of attorney for finances and property for his wife since 2005. (*Id.*)

class action against China Natural Gas, Inc. ("China Natural Gas").[2] (D.I. 1 at ¶¶ 1, 8) Plaintiffs allege that China Natural Gas failed to disclose material facts regarding its financial well-being which, in turn, led plaintiffs to purchase China Natural Gas common stock to their financial detriment during the time period of March 10, 2010 to August 19, 2010 (hereinafter the "Class Period"). (Id. at ¶¶ 41, 55-56)

3. According to plaintiffs, China Natural Gas entered into a bank loan that required China Natural Gas to restructure a portion of its debt from long-term liabilities to short-term liabilities. (Id. at ¶¶ 27, 41) Plaintiffs further allege that China Natural Gas misclassifed this debt restructuring in an SEC filing in March of 2010.[3] (Id. at ¶ 41) On August 20, 2010, China Natural Gas filed an amended SEC form, addressing its previous misrepresentation regarding the loan. (Id. at ¶ 50) Plaintiffs allege that the closing price for China Natural Gas shares "declined markedly" after the amended SEC filing.[4] (Id. at ¶ 54) Plaintiffs raise claims for violations of Section 10(b)-5 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act. (Id. at ¶¶ 65, 69)

4. A notice of the class action was published on September 2, 2010. (D.I. 7, ex.

---

[2] China Natural Gas provides pipeline natural gas in China, and it is the first China-based natural gas company that is publicly traded in the United States. (D.I. 1 at ¶ 8)

[3] During the summer that followed, China Natural Gas filed a company quarterly report (D.I. 1 at ¶ 45-46) and an SEC Form 8-K (id. at ¶ 49) detailing its financial misrepresentations. Between the quarterly report and SEC filing, China Natural Gas issued a press release; however, the press release failed to disclose any information about the loan or subsequent debt restructuring. (Id. at ¶ 48)

[4] The price declined from $6.64 on August 13, 2010 to $5.29 on August 24, 2010. (D.I. 1 at ¶ 54)

2

A; D.I. 10, ex. 1) Crippa and Skeway both timely filed motions to become lead plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i)(II),[5] and both assert that they possessed stock in China Natural Gas during the Class Period. (D.I. 6 at 6; D.I. 9 at 5) Crippa alleges he suffered losses of over $16,000. (D.I. 6 at 6; D.I. 7, ex. B) Skeway alleges he expended net funds of $319,300.15 and suffered losses of $155,508.05. (D.I. 9 at 5; D.I. 10, ex. 3)

5. Crippa is moving for Robbins Umeda LLP to be lead counsel and Bouchard Margules & Friedlander, P.A. to be liaison counsel. (D.I. 5) Skeway is moving for the Rosen Law Firm, P.A. to be lead counsel and Rigrodsky & Long, P.A. to be liaison counsel. (D.I. 8)

6. **Standard of review.** Both the selection of a lead plaintiff, or the "most adequate plaintiff," and the approval of a lead plaintiff's choice of lead counsel is "committed to the court's discretion." *Dutton v. Harris Stratex Networks, Inc.*, Civ. No. 08-755, 2009 WL 1598408, at *2 (D. Del. June 5, 2009) (quoting *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005)). Despite having this discretion, the court nevertheless must follow the procedures established in the Private Securities Litigation Reform Act (the "PSLRA"). *See id.*

7. Under the PSLRA, determining which movant qualifies as the lead plaintiff is a two-step process. *See City of Roseville Emps. Ret. Sys. v. Horizon*, Civ. No. 08-969, 2009 WL 1811067, at *1 (D. Del. June 18, 2009). First, the court identifies a

---

[5] 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) provides, in pertinent part: "[N]o[ ] later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."

3

presumptive lead plaintiff and, second, it determines whether the presumption has been rebutted. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *see also* 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(I) & (II). The court adopts the presumption that a particular plaintiff is the most adequate plaintiff when that movant: (1) "has either filed the complaint or made a motion in response to a notice," (2) "in the determination of the court has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(i) & (iii)(I); *see also City of Roseville*, 2009 WL 1811067, at *1.

8. To identify the movant with the largest financial interest, "a court should consider, among other things: (1) the number of shares that the [m]ovant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Cendant*, 264 F.3d at 222.

9. To meet the "otherwise satisfies" criterion, the movant must establish only a *prima facie* case of typicality and adequacy under traditional Rule 23 principles. *Id.* at 263. A court must make its finding independently and cannot consider whether the presumption has been rebutted by members of the purported class. *See id.* at 263-64. Typicality requires that "a party seeking to represent a class have 'claims or defenses [that] are typical of the claims or defenses of the class.'" *Id.* at 263 (quoting Fed. R. Civ. P. 23(a)(3)). The court should consider "whether the circumstances of the movant with the largest losses 'are markedly different or the legal theory upon which the claims [of

4

that movant] are based differ[ ] from that upon which the claims of other class members will perforce be based.'" *Id.* at 265 (quoting *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)).

10. The adequacy requirement "mandates that a representative party be able to 'fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). For adequacy, "courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id.* (quoting *Hassine*, 846 F.2d at 179).

11. The Third Circuit has established two additional factors for a court's consideration when it seeks to establish the threshold adequacy requirement. *See City of Roseville*, 2009 WL 1811067, at *2 (citing *Cendant*, 264 F.3d at 265-66). The first is "whether the movant has demonstrated a willingness and ability to select competent class counsel **and to negotiate a reasonable retainer agreement with that counsel**." *Cendant*, 264 F.3d at 265 (citing *In re Quintus Sec. Litig.*, 201 F.R.D. 475, 485 (N.D. Cal. 2001)) (emphasis added). This inquiry, however, should only negatively impact the adequacy threshold if "the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'" *Vicuron Pharms., Inc. Secs. Litig.*, 225 F.R.D. 508, 511-12 (E.D. Pa. 2004) (quoting *Id.* at 266). The second threshold inquiry pertains to group movants and is not relevant here. *See City of Roseville*, 2009 WL 1811067, at *2.

5

12. **Discussion.** At this time, the court declines to appoint a lead plaintiff. While both Skeway and Crippa satisfy the first requirement from *Cendant*, which requires the timely filing of motions, and Skeway satisfies the second requirement (with the larger loss), both Skeway and Crippa fail to satisfy the third prong because neither have supplied the court with the requisite materials to fully determine adequacy.[6] *See Cendant*, 264 F.3d at 262; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).

13. "The adequacy determination is made in context with the movant's choice of lead counsel." *Vicuron Pharms.*, 225 F.R.D. at 511 (citations omitted). While it is indisputable that Skeway's counsel is qualified,[7] there is no reference of fees, retainer agreements, or negotiations regarding the retention of counsel anywhere in the papers submitted with the Skeway motion. Without this information, the court cannot make a full finding of adequacy. *See Cendant*, 264 F.3d at 268 (finding that the presumptive lead plaintiff's negotiated retainer was crucial to the lower court's analysis as to whether movant satisfied the adequacy requirement); *see also Roth v. Knight Trading Grp., Inc.*, 228 F. Supp. 2d 524, 527 (D.N.J. 2002) (reserving decision on appointing the

---

[6] The court acknowledges that there is a statutory requirement under the PSLRA, requiring it to appoint a lead plaintiff within 90 days after the publication of the notice of the pending class action. However, the competing motions to appoint lead plaintiff and counsel have caused a delay in such an appointment. *See* 15 U.S.C. § 78u-4(a)(3)(B)(I); *see also Raftery v. Fin., Co.*, Civ. No. 97-624, 1997 WL 529553, at *1 (N.D. Ill. Aug. 15, 1997) (highlighting how competing motions commonly cause delays in appointment of lead plaintiffs). Despite the statutory period lapsing, caselaw confirms that the decision to appoint lead plaintiff still resides within the purview of the court. *See generally Raftery*, 1997 WL 529553.

[7] Attached to the Skeway motion is a declaration consisting of resumes from each of the two firms Skeway proposes as lead and liaison counsel. Both are nearly 15 pages in length and detail the numerous securities litigation each has litigated. (D.I. 10, exs. 4, 5)

presumptive lead plaintiff's lead counsel choice until after the court had reviewed the retainer agreement).

14. "[I]f [a district court] (for any reason) determines that the movant with the largest losses cannot make a threshold showing of typicality or adequacy, then the court should explain its reasoning on the record . . . disqualify that movant . . . [and] identify the movant with the next largest loss." *Cendant*, 264 F.3d at 267 (citing *Raftery v. Fin., Co.*, Civ. No. 97-624, 1997 WL 529553, at *2-4, *7 (N.D. Ill. Aug. 15, 1997)). Presumably, because Skeway did not include in the papers subsequent to his motion information regarding fees, the court should disqualify him and look to the movant with the next largest loss. *See id.*; *see also Smith v. Suprema Specialities, Inc.*, 206 F. Supp. 2d 627, 638, 641-42 (D.N.J. 2002) (appointing a movant with less financial loss because it submitted evidence of its negotiated fee schedule after disqualifying a movant with more financial loss because the latter failed to assert that it negotiated a retainer). Along this rationale, next in line for lead plaintiff status would be Crippa; however, Crippa fails the adequacy prong as well because none of the papers submitted in connection with the Crippa motion addresses fees or retainer agreements either.[8] Again, without this information, the court cannot make a determination as to the adequacy requirement fully at this time. *See, e.g., Cendant*, 264 F.3d at 267; *Smith*, 206 F. Supp. 2d at 638, 641-42.

15. The Third Circuit has made it clear that a movant must satisfy the threshold requirements outlined in *Cendant* – making a motion, qualifying as the movant with the

---

[8] Crippa's proposed counsel submitted a 20-page resume detailing its work in securities litigation and class actions, but failed to address negotiations regarding fees.

7

largest financial interest, and satisfying the Rule 23 requirements – before a member of the purported class may rebut that presumption. *See* 264 F.3d at 264 (citing 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)). While both Skeway and Crippa go to great lengths in their briefs to attack the other's ability, or alleged inability, to fulfill the threshold requirements, neither acknowledged the other's omissions regarding fees.[9] Therefore, taking into consideration only the pleadings and papers submitted therewith, the court lacks the key information needed to decide the adequacy requirement.

16. The Third Circuit has stated that the crux of the court's inquiry into the adequacy requirement is whether "the lead plaintiff's selection and agreement with counsel are reasonable on their own terms." *Cendant*, 264 F.3d at 276. To facilitate the decision, the Cendant court outlined factors for consideration:

> (1) the quantum of legal experience and sophistication possessed by the lead plaintiff; (2) the manner in which the lead plaintiff chose what law firms to consider; (3) the process by which the lead plaintiff selected its final choice; (4) the qualifications and experience of counsel selected by the lead plaintiff; and (5) the evidence that the retainer agreement negotiated by the lead plaintiff was (or was not) the product of serious negotiations between the lead plaintiff and the prospective lead counsel.

*Id.* (citing *In re Nice Sys. Sec. Litig.*, 188 F.R.D. 206, 223 (D.N.J. 1999)). The court stressed that the factors are not exhaustive and the true inquiry revolves around whether "the lead plaintiff's choices were the result of a good faith selection and negotiation process and were arrived at via meaningful arms-length bargaining." *Id.* If there is a finding of unreasonableness, the court must then step in to shelter the class

---

[9] Skeway has submitted a declaration attesting to his willingness to be lead plaintiff, but he has not described in any detail what lengths he underwent in negotiating fee arrangements with counsel. (D.I. 16, ex. 1) Neither of Crippa's two declarations (D.I. 7; D.I. 14) describe fees or retainer agreements.

8

from the movant's choices. See id. at 267-77.

17. Several courts in this circuit have also required information from movants regarding retainer negotiations or fees before making a Rule 23 adequacy decision. See, e.g., In re Able Labs. Sec. Litig., 425 F. Supp. 2d 562, 573-74 (D.N.J. 2006) (appointing movant the lead plaintiff because she stated in the declaration subsequent to her motion the "thorough process" she went through to select lead counsel and negotiate a deal); In re Vonage Initial Pub. Offering Sec. Litig., Civ. No. 07-177, 2007 WL 2683636, at *10, (D.N.J. Sept. 7, 2007) (appointing lead plaintiff because it executed a "reasonable retainer agreement"); A.F.I.K. Holding SPRL v. Fass, 216 F.R.D. 567, 573 (D.N.J. 2003) (appointing lead plaintiff and lead counsel after reviewing, in camera, the agreement and finding it not to be "clearly unreasonable").

18. So that the court will have in its possession all relevant materials to fully evaluate the adequacy requirement of the Rule 23 analysis, the court requires Skeway and Crippa to both submit supplemental briefs detailing their respective undertakings in retaining counsel and describing any fees or retainer agreements subsequent thereto.[10] See, e.g., Rubke v. Capitol Bancorp, Civ. No. 05-4800, 2006 WL 734390, at *5 (N.D. Cal. Mar. 21, 2006) (requesting the sole movant to submit declarations demonstrating its selection of counsel was the result of good-faith selection and negotiation); In re Star Gas Sec. Litig., Civ. No. 04-1766, 2005 WL 818617, at *8 (D. Conn. Apr. 8, 2005) (requiring supplemental submissions from all proposed lead counsel concerning fee arrangements); In re Cree, Inc., Sec. Litig., 219 F.R.D. 369, 372-73 (M.D.N.C. 2003)

---

[10] Submissions must otherwise comply with D. Del. LR 7.1.3(a)(2).

(requesting proposed lead counsel to supply the court with its usual hourly rate and fee arrangements).

THEREFORE, IT IS FURTHER ORDERED that, on or before **July 12, 2011**, Skeway and Crippa shall each submit supplemental briefs, which shall not exceed ten (10) double-spaced pages, detailing fee arrangements, retainer agreements, and the process of negotiations to reach said fees and retainers.

_____
United States District Judge