IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| MAXWELL VANDEVELDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civ. No. 10-728-SLR |
| ) | |
| CHINA NATURAL GAS, INC., QINAN JI, ) | |
| ZHIQIANG WANG, DONALD YANG, ) | |
| DAVID SHE, CARL YEUNG, and ) | |
| LAWRENCE LEIGHTON ) | |
| ) | |
| Defendants. ) | |

---

Peter Bradford deLeeuw, Esquire of Rosenthal, Monhait & Goddess, P.A., Wilmington Delaware. Counsel for Plaintiff. Shapiro Haber & Urmy LLP. Of Counsel.

Joel Friedlander, Esquire and Sean M Brennecke, Esquire of the Bouchard, Margules & Friedlander, P.A., Wilmington, Delaware. Proposed Liaison Counsel for Plaintiffs and Class. Brian J. Robbins, Esquire and Craig W. Smith, Esquire of Robbins Umeda LLP. Counsel for Proposed Lead Plaintiff Richard Crippa.

Seth D. Rigrodsky, Esquire and Brian D. Long, Esquire of the Rigrodsky & Long, P.A., Wilmington, Delaware. Proposed Liaison Counsel for Plaintiffs and Class. Lauren M. Rosen, Esquire and Phillip Kim, Esquire of The Rosen Law Firm, P.A. Counsel for Proposed Lead Plaintiff Robert Skeway.

Jon E. Abramczyk, Esquire and John DiTomo, Esquire of Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware. Counsel for Defendants.

---

**MEMORANDUM OPINION**

Dated: August 12, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

On August 26, 2010, plaintiff Maxwell Vandevelde, individually and on behalf of all others similarly situated (collectively, "plaintiffs"), instituted the present securities class action against China Natural Gas, Inc. ("China Natural Gas").[1] (D.I. 1 at ¶¶ 1, 8) Before the court are two competing motions for appointment of lead plaintiff and approval of selection of lead counsel. Robert Skeway ("Skeway")[2] filed the "Skeway motion" on October 25, 2010. (D.I. 8) Richard Crippa ("Crippa") filed the "Crippa motion" on October 26, 2010. (D.I. 5) For the foregoing reasons, Skeway's motion (D.I. 8) is granted and Crippa's motion (D.I. 5) is denied.

## II. BACKGROUND

Plaintiffs allege that China Natural Gas failed to disclose material facts regarding its financial well-being which, in turn, led plaintiffs to purchase China Natural Gas common stock to their financial detriment during the time period of March 10, 2010 to August 19, 2010 (hereinafter the "class period"). (D.I. 1 at ¶¶ 41, 55-56) According to plaintiffs, China Natural Gas entered into a bank loan that required China Natural Gas to restructure a portion of its debt from long-term liabilities to short-term liabilities. (Id. at ¶¶ 27, 41) Plaintiffs further allege that China Natural Gas misclassifed this debt restructuring in an SEC filing in March of 2010. (Id. at ¶ 41) On August 20, 2010,

---

[1] China Natural Gas provides pipeline natural gas in China, and it is the first China-based natural gas company that is publicly traded in the United States. (D.I. 1 at ¶ 8)

[2] Skeway moves on behalf of both himself and his wife, Lisa Skeway. (D.I. 9 at 5 n.1) During the relevant time period, Skeway purchased China Natural Gas stock on behalf of himself and his wife and handled all investment decisions. (Id.) Skeway has had power of attorney for finances and property for his wife since 2005. (Id.)

China Natural Gas filed an amended SEC form, addressing its previous misrepresentation regarding the loan. (*Id.* at ¶ 50) Plaintiffs allege that the closing price for China Natural Gas shares "declined markedly" after the amended SEC filing.[3] (*Id.* at ¶ 54) Plaintiffs raise claims for violations of Section 10(b)-5 of the Securities Act and Sections 10(b) and 20(a) of the Exchange Act.[4] (*Id.* at ¶¶ 65, 69)

During the class period, Skeway engaged in non-confidential communications with China Natural Gas's public relations and investor relations firm, RedChip Companies, Inc. ("RedChip"). (D.I. 16, ex 1 at ¶ 5) Additionally, during the class period, Skeway posted on Yahoo! message boards about China Natural Gas stock prices, company productivity, and SEC investigations. (D.I. 14, exs. A-F)

---

[3] The price declined from $6.64 on August 13, 2010 to $5.29 on August 24, 2010. (D.I. 1 at ¶ 54)

[4] Section 10(b) makes it

> unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange . . . [t]o use or employ, in connection with the purchase or sale of any security . . . any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary and appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j. Rule 10b–5 makes it unlawful:

> (a) To employ any device, scheme, or artifice to defraud,
>
> (b) To make any untrue statement of a material fact or to omit to state a material fact necessary to make the statements made, in light of the circumstances under which they were made, not misleading, or
>
> (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

A notice of the class action was published on September 2, 2010. (D.I. 7, ex. A; D.I. 10, ex. 1) Crippa and Skeway both timely filed motions to become lead plaintiff, pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i)(II),[5] and both assert that they possessed stock in China Natural Gas during the class period. (D.I. 6 at 6; D.I. 9 at 5) Crippa alleges he suffered losses of over $16,000. (D.I. 6 at 6; D.I. 7, ex. B) Skeway alleges he expended net funds of $319,300.15 and suffered losses of $155,508.05. (D.I. 9 at 5; D.I. 10, ex. 3)

Crippa is moving for Robbins Umeda LLP to be appointed lead counsel and Bouchard Margules & Friedlander, P.A. to be appointed liaison counsel. (D.I. 5) Skeway is moving for the Rosen Law Firm, P.A. to be appointed lead counsel and Rigrodsky & Long, P.A. to be appointed liaison counsel. (D.I. 8) Per the court's June 29, 2010 order (D.I. 18), both parties have submitted supplemental briefs describing in clearer detail the fee arrangements, retainer agreements, and the process of negotiations to reach said fees and retainers.

## III. STANDARD OF REVIEW

Both the selection of a lead plaintiff, or the "most adequate plaintiff," and the approval of a lead plaintiff's choice of lead counsel is "committed to the court's discretion." *Dutton v. Harris Stratex Networks, Inc.*, Civ. No. 08-755, 2009 WL 1598408, at *2 (D. Del. June 5, 2009) (quoting *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005)). Despite having this discretion, the court

---

[5] 15 U.S.C. § 78u-4(a)(3)(A)(i)(II) provides, in pertinent part: "[N]o[ ] later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff."

3

nevertheless must follow the procedures established in the Private Securities Litigation Reform Act (the "PSLRA"). *See id.*

Under the PSLRA, determining which movant qualifies as the lead plaintiff is a two-step process. *See City of Roseville Emps. Ret. Sys. v. Horizon*, Civ. No. 08-969, 2009 WL 1811067, at *1 (D. Del. June 18, 2009). First, the court identifies a presumptive lead plaintiff and, second, it determines whether the presumption has been rebutted. *See In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001); *see also* 15 U.S.C. §§ 78u-4 (a)(3)(B)(iii)(I) & (II). The court adopts the presumption that a particular plaintiff is the most adequate plaintiff when that movant: (1) "has either filed the complaint or made a motion in response to a notice," (2) "in the determination of the court has the largest financial interest in the relief sought by the class," and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §§ 78u-4(a)(3)(B)(i) & (iii)(I); *see also City of Roseville*, 2009 WL 1811067, at *1.

To identify the movant with the largest financial interest, "a court should consider, among other things: (1) the number of shares that the [m]ovant purchased during the putative class period; (2) the total net funds expended by the plaintiffs during the class period; and (3) the approximate losses suffered by the plaintiffs." *Cendant*, 264 F.3d at 222. To meet the "otherwise satisfies" criterion, the movant must establish only a *prima facie* case of typicality and adequacy under traditional Rule 23 principles. *Id.* at 263. At this stage of the analysis, a court must make its *prima facie* finding independently and cannot consider whether the presumption has been rebutted by members of the

4

purported class. *See id.* at 263-64.

## IV. DISCUSSION

Both movants satisfy the first prong for presumptive lead plaintiff status as both made timely motions in response to a published notice. *See* 15 U.S.C. §§ 78u-4(a)(3)(B)(i) & (iii)(I). The court moves to the next prong – the determination as to which movant has the largest financial interest – and finds that Skeway presumptively satisfies this prong as his losses amount to over $155,000, and Crippa only claims losses amounting to $16,000. Upon finding that Skeway is the movant with the largest financial loss, the court will next address whether Skeway satisfies the *prima facie* requirements of Rule 23.

### A. Typicality

"The typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals. However, typicality . . . does not require that all putative class members share identical claims." *In re Molson Coors*, 233 F.R.D. at 152 (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 531-32 (3d Cir. 2004)). "Factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory." *Grasty v. Amalgamated Clothing & Textile Workers Union*, 828 F.2d 123, 130 (3d Cir. 1987) (citation omitted). "Indeed, even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories." *Baby Neal v. Casey*, 43 F.3d 48, 58 (3d

5

Cir. 1994). Because at this juncture the court's initial inquiry into whether movant satisfies the typicality and adequacy requirements "need not be extensive," the court finds that Skeway makes out the *prima facie* case for typicality. See *Cendant*, 264 F.3d at 264. Skeway has the same interests and shares the same legal theories as the rest of the class. Both Skeway and plaintiffs allege that China Natural Gas violated the Exchange Act by failing to disclose material facts about their business dealings, which led both the class and Skeway to purchase shares to their financial detriment.

### B. Adequacy

"The adequacy determination is made in context with the movant's choice of lead counsel." *Vicuron Pharms., Inc. Secs. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004) (citation omitted). The adequacy requirement "mandates that a representative party be able to 'fairly and adequately protect the interests of the class.'" *Id.* (quoting Fed. R. Civ. P. 23(a)(4)). For adequacy, "courts should consider whether [the movant] 'has the ability and incentive to represent the claims of the class vigorously, [whether the movant] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class.'" *Id.* (quoting *Hassine*, 846 F.2d at 179). This inquiry, however, should only negatively impact the adequacy threshold if "the proposed lead counsel is 'so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class.'" *Id.* at 511-12.

As instructed by the court's June 29th order, Skeway submitted supplemental briefs attesting to the fee arrangements and negotiations subsequent thereto. The court finds that Skeway satisfies the adequacy requirement because Skeway has chosen a firm with adequate credentials that has requested a reasonable one-third

6

contingent fee.[6] See *Neuberger v. Shapiro*, 110 F. Supp. 2d 373, 386 (E.D. Pa. 2000) (allowing attorneys to recover 30% of recovery). The fees negotiated between Skeway and his proposed counsel are "reasonable on their own terms." *Cendant*, 264 F.3d at 276. Additionally, Skeway has submitted two declarations attesting to his desire to be lead plaintiff and expressing his understanding of the responsibilities that such a position entails. (D.I. 10; D.I. 22)

Because Skeway has the largest financial loss and satisfies the *prima facie* showing of typicality and adequacy, the court finds that Skeway is the presumptive lead plaintiff.[7] Per the PSLRA, the court will move to the second step and consider whether Crippa has successfully rebutted the presumption.

### C. Rebutting the Presumption

According to the statute, the court's presumption as to lead plaintiff may be rebutted by evidence supplied by a member of the purported plaintiff class which states that the presumptive lead plaintiff either (1) "will not fairly and adequately protect the interests of the class" or (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb).

Crippa argues that Skeway does not qualify as the most adequate plaintiff

---

[6] To make its determination, the court has reviewed the supplemental brief, a letter that Skeway's counsel wrote to Skeway informing him more in-depth about the one-third contingent fee arrangement, and Skeway's own declaration attesting to the process he underwent to select The Rosen Law Firm.

[7] The "threshold determination of whether the movant with the largest financial losses satisfies the typicality and adequacy requirements should be a product of the court's independent judgment . . . ." *Cendant*, 264 F.3d at 263-64.

because he has unique defenses, which make his claims atypical from the class, and his credibility is questionable. Specifically, Crippa argues that (1) Skeway's frequent contacts with RedChip subject him to the unique defense of non-reliance; (2) because Skeway posted on Yahoo! message boards that there was no fraudulent activities occurring at China Natural Gas his credibility is questionable; and (3) Skeway's credibility is further questioned because he posted "over 150 comments" on Yahoo! message boards concerning China Natural Gas. (D.I. 13)

Skeway rebuts Crippa's arguments by stating that (1) his communications with China Natural Gas do not create a unique defense because he did not receive any non-public information from RedChip; (2) his Yahoo! message board postings do not render him inadequate because he indicated in other posts that improper internal governance in the company was afoot; and (3) Crippa does not cite caselaw to confirm that his postings disqualify him as a presumptive lead plaintiff. (D.I. 15)[8]

### 1. Unique defense

In a securities litigation case under Rule 10b-5, there are six elements a plaintiff must establish to successfully bring a claim.[9] See Crammer v. Bloom, 711 F. Supp.

---

[8] The court cites to Skeway's answering brief in opposition to movant Crippa's lead plaintiff motion (D.I. 15) because Skeway did not independently file a reply brief to his own motion. Skeway's answering brief addresses the issues raised in Crippa's answer.

[9] The six elements are: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." In re DVI, Inc. Secs. Litig., 639 F.3d 623, 631 (3d Cir. 2011) (quoting Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc., 552 U.S. 148 (2008)).

1264, 1276 (D.N.J. 1989). One of the elements is reliance upon false statements. *See id.* To prove reliance, plaintiffs use on the fraud-on-the-market theory,[10] rather than directly on defendant's misrepresentations. *See id.* Here, Crippa argues that Skeway cannot avail himself of this theory because he relied on non-market information (his communications with RedChip), which render him atypical of the class.

According to the Third Circuit, the court's duty once the presumption has been triggered is "not whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a 'fair[ ] and adequate [ ]' job." *Cendant*, 264 F.3d at 268. Most importantly, the allegations upon which a rebuttal is based must comprise "actual proof" because "allegations of impropriety are not proof of wrongdoing." *Id.* at 269 (finding that absent actual evidence, the presumption of lead plaintiff status had not been rebutted); *see also Constance Sczesny Trust v. KPMG LLP*, 223 F.R.D. 319, 324-25 (S.D.N.Y. 2004) ("[C]onclusory assertions of inadequacy are, however, insufficient to rebut the statutory presumption under the PSLRA without specific support in evidence of the existence of an actual or potential conflict of interest or a defense to which [movant] would be uniquely subject.").

Crippa has not offered substantial proof of his allegations that Skeway received

---

[10] "The fraud-on-the-market theory provides a presumption that a plaintiff 'who buys or sells stock at the price set by the market does so in reliance on the integrity of that price,' which, in turn, depends on the accuracy of the publicly available information." *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 312 (E.D. Va. 2007) (quoting *Basic, Inc. v. Levinson*, 485 U.S. 224, 247 (1988)).

non-public information from RedChip. The only evidence Crippa points to are Yahoo! message board postings which reiterate conversations with RedChip regarding China Natural Gas's business. (D.I. 14, ex.1, 2, 15, 18-19) Compare *Shiring v. Tier Technologies, Inc.*, 244 F.R.D. 307, 312 (E.D. Va. 2007) (denying class certification because the lead plaintiff testified that he had face-to-face interactions with the company's chief financial officer about the value of the stock). Not only did Skeway submit a declaration attesting that his communications with RedChip did not concern confidential information (D.I. 16, ex. 1 at ¶ 5), but Skeway posted the information he learned from RedChip on public internet message boards. (D.I. 14, ex.1, 2, 15, 18-19) Because Crippa has not produced evidence proving that Skeway received information that was non-public, Skeway's reliance claim remains intact and, therefore, he is not atypical of the class.

### 2. Yahoo! message board postings

The court will consolidate Crippa's second and third arguments, which claim that some of the alleged 150 comments posted on Yahoo! message boards were misleading, because both arguments go to Skeway's credibility as a presumptive lead plaintiff.[11] Crippa relies on *Karnuth v. Rodale, Inc.*, Civ. No. 03-742, 2005 WL 747251, *3-4 (E. D. Pa. Mar. 30, 2005), to question Skeway's credibility. In *Karnuth*, the court found that plaintiff's credibility was in "serious question" because of inconsistencies regarding his original complaint and depositions that took plaintiff nearly 15 months to

---

[11] The parties seem to agree that Skeway used the screename "rskeway." Although there is not evidence put forth to establish this, the court will assume it to be true.

correct through the filing of an amended complaint. See id. The emphasis on *Karnuth* is misplaced, however, because Skeway has not made any material misrepresentations in his filings that would call into question his credibility.

Crippa argues that Skeway's internet postings illustrate that he did not believe there was fraudulent activities ongoing at China Natural Gas. (D.I. 13 at 5) To substantiate his assertions, Crippa cites snippets of longer quotes and argues they are representative of Skeway's disbelief that there were fraudulent happenings at China Natural Gas. For example, in his brief, Crippa argues that Skeway stated on message boards that there were "no earnings issues/manipulation," "no fraud" and "no fundamental financial issues." (*Id.*) However, upon consultation of the attached exhibits (the internet postings), it is evident that Crippa bases his argument on a post wherein Skeway summarizes an SEC filing, not his own personal assessment of the company. Further, within the same posting, Skeway states that

> the CEO was running the company as if it were a sole proprietorship (i.e. treating the assets as if they are all his and he calls all shots). The issue is with governance. The CEO needs to learn to ask for parents' permission, aka Board of Directors, before acting on major decisions.

(D.I. 14, ex. G1-2) This particular posting does not call into question Skeway's credibility because he does not, as Crippa claims, assert there were no financial troubles at China Natural Gas during the class period. Rather, Skeway comments about China Natural Gas's CEO engaging in improper governance and shines light on corporate malfeasance.

Crippa calls into question Skeway's credibility by highlighting five specific posts

11

which arguably relate to Skeway's personal financial decisions to sell stock.[12] Quite frankly, the court does not know what these postings mean or how they might reflect on Skeway's credibility. Crippa has not carried his burden in this regard. Moreover, unlike *Karnuth,* Skeway has not made any material misrepresentations in filings to the court. *See* 2005 WL 747251 at *3-4.

In sum, according to the statute, the presumptive lead plaintiff status can only be rebutted if he or she "will not fairly and adequately protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). The court is satisfied that Skeway qualifies as presumptive lead plaintiff. Crippa has not to persuasively rebutted that presumption.

## V. CONCLUSION

For the foregoing reasons, the court finds that Skeway is the lead plaintiff and approves his choice for lead and liaison counsel. An appropriate order shall issue.

---

[12] On July 2, 2010, Skeway posted that he is "adding shares in .40 increments here." (D.I. 14, ex. B at 1) On August 8, 2010, Skeway posted that he had "been picking up Dec Calls, strike price of $10 right now, timing could be OK, we will see." (D.I. 14, ex. C at 1) On August 17, 2010 Skeway posted that he was "OK holding [his] shares for the long term." (D.I. 14, ex. D at 1) On August 18, 2010, Skeway posted that he was "holding [his] shares in my IRA no margin, no hurry to sell. Let the LNG plant and River business roll out then look at the price." (D.I. 14, ex. E at 2) On August 19, 2010, Skeway posted that he would "hold this stock at this time and wait to see how the LNG and NG sales, Riverboat sales roll out. I will be calling Red [sic] Chip to suggest a press release discussing LNG and NG distribution options in general without comprising CHNG marketing information. This should help demonstrate the market potential given the successful completion of the LNG facility." (D.I. 14, ex. F at 1-2)