IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

ROBERT SKEWAY and RAIMUNDO
JO-FUNG, Individually and On Behalf of All
Others Similarly Situated,

Plaintiffs,

v.

CHINA NATURAL GAS, INC., QINAN JI,
and DAVID SHE,

Defendants.

Civil Action No. 10-728-RGA

MEMORANDUM OPINION

Seth D. Rigrodsky, Esq., Rigrodsky & Long. P.A., Wilmington, DE; Brian D. Long, Esq., Rigrodsky & Long. P.A., Wilmington, DE; Gina M. Serra, Esq., Rigrodsky & Long. P.A., Wilmington, DE, Liaison Counsel for Plaintiffs.

Laurence M. Rosen, Esq., The Rosen Law Firm, P.A., New York, NY; Phillip Kim, Esq., The Rosen Law Firm, P.A., New York, NY, Lead Counsel for Plaintiffs.

June 18 , 2014

*Richard G. Andrews*

ANDREWS, U.S. District Judge:

Pending before the Court is Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel (D.I. 88).

Plaintiffs Robert Skeway ("Skeway") and Raimundo Jo-Fung ("Jo-Fung") (collectively "Plaintiffs") brought this action against China Natural Gas, Inc. ("CHNG"), Qinan Ji ("Ji"), and David She ("She") (collectively "Defendants"). (D.I. 55 at 2-5). Plaintiffs' Second Amended Complaint asserts a claim for damages for violations of the Securities Exchange Act of 1934. (D.I. 55 at 2).

Defendant She has not been served, and he therefore has not participated in the litigation. On April 1, 2013, CHNG filed a Notice of Involuntary Petition for Relief under Chapter 11 of the Bankruptcy Code. (D.I. 70). The bankruptcy petition stayed the case against CHNG. This case continues against Ji.

On September 10, 2013, the Clerk of the Court entered a default against Ji pursuant to Federal Rule of Civil Procedure 55(a) for failure to appear or answer Plaintiffs' Second Amended Complaint. (D.I. 87). Prior to moving for a default judgment against Ji, Plaintiffs seek class certification for all similarly situated investors in CHNG. (D.I. 88 at 1).

## BACKGROUND

CHNG is a Delaware corporation with its principal executive offices located in the People's Republic of China. (D.I. 55 at 6). CHNG, through its wholly-owned subsidiaries, engages in the business of distributing compressed natural gas in the People's Republic of China. *Id.* At the time of the alleged securities law violations, Defendant Ji was the Chief Executive Officer ("CEO"), President, and Principal Executive of CHNG, and Defendant She was the Chief

Financial Officer ("CFO") of CHNG.  (D.I. 55 at 7).   At that time, CHNG's common stock was actively traded on the New York Stock Exchange.  (D.I. 55 at 6).

In January 2010, CHNG subsidiaries extended two loans of $9,858,240 and $4,401,000 to a real estate company to finance a real estate development project (the "Related Party Transactions").  (D.I. 55 at 12-14).  Ji's son owned 90% of the real estate company and Ji's nephew owned the other 10% of the company.  *Id.*  Ji approved both loans without informing or obtaining the approval of CHNG's board of directors or the CFO.  (D.I. 55 at 15).  Ji ordered CHNG's internal audit chief to conceal the Related Party Transactions and failed to disclose the true nature of the Related Party Transactions to CHNG's board of directors and its outside auditors. (D.I. 55 at 13-17).  Generally Accepted Accounting Principles ("GAAP") and SEC regulations required disclosure of the Related Party Transactions.  (D.I. 55 at 18-23; D.I. 89 at 7).

On February 26, 2010, CHNG entered into a bank loan for $17,676,000 (the "Bank Loan"). (D.I. 55 at 10; D.I. 89 at 7).  The Bank Loan was guaranteed by a CHNG subsidiary and secured by a pledge of the assets of that CHNG subsidiary.  (D.I. 55 at 10).  Ji signed all of the documents for the Bank Loan, including the guarantee and the pledge of the assets.  *Id.*  The $17 million Bank Loan represented more than 33% of CHNG's total liabilities.  (D.I. 55 at 11).  GAAP and SEC regulations also mandated disclosure of the Bank Loan.  (D.I. 55 at 18-23; D.I. 89 at 7).  Ji concealed the Bank Loan from CHNG's board of directors, outside auditors, and investors by ensuring it was not reflected in CHNG's financial statements.  (D.I. 55 at 12; D.I. 89 at 7).

In June 2010, CHNG admitted that it did not disclose the Bank Loan in its 2009 annual report originally issued on March 10, 2010 or its quarterly report issued on May 7, 2010.  (D.I. 55 at 26-27; D.I. 89 at 8).  Further, on September 21, 2011, CHNG reported that it had engaged in the undisclosed Related Party Transactions in violation of GAAP and SEC regulations.  (D.I. 55 at

36). That same day NASDAQ halted trading of CHNG shares in response to the disclosure of the Related Party Transactions. (D.I. 55 at 37; D.I. 89 at 8). NASDAQ delisted CHNG shares on November 9, 2011. (D.I. 55 at 37; D.I. 89 at 8). CHNG issued four different restatements of its financial reports in order to correct the falsities contained in its financial statements resulting from the concealment of the Bank Loan and the Related Party Transactions. (D.I. 55 at 26-38). With each disclosure, CHNG's share price declined, resulting in losses for investors. (D.I. 89 at 8).

Plaintiffs are investors who purchased CHNG shares. (D.I. 55 at 5). Plaintiffs' Second Amended Complaint, filed on July 27, 2012, asserts claims for damages pursuant to § 10(b) of the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) and Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5) and § 20(a) of the Securities Exchange Act of 1934 (15 U.S.C. § 78t(a)). (D.I. 55 at 5).

On June 20, 2013, Ji was served with a copy of the summons and the Second Amended Complaint at his home and work addresses in the People's Republic of China pursuant to Federal Rule of Civil Procedure 4(f) and the Hague Convention. (D.I 86 at 1; D.I. 83 at 3, 6). On September 9, 2013, pursuant to Federal Rule of Civil Procedure 55(a), Plaintiffs requested an entry of default against Ji for failing to respond in accordance with Federal Rule of Civil Procedure 12. (D.I. 86 at 1). The following day, September 10, 2013, the Clerk of the Court entered a default pursuant to Rule 55(a) against Ji. (D.I. 87). Plaintiffs have not yet moved for default judgment against Ji. (D.I. 89 at 9).

On December 23, 2013, Plaintiffs moved for their appointment as class representatives, the appointment of class counsel, and class certification under Federal Rule of Civil Procedure 23 "on behalf of those persons or entities that purchased or otherwise acquired the public traded common

stock of China Natural Gas, Inc. between March 10, 2010 and September 21, 2011, inclusive" (the "Class").[1]   (D.I. 88 at 1; D.I. 89 at 6).

## DISCUSSION

### I.  The Effect of the Entry of Default on Plaintiffs' Motion for Class Certification

As a threshold matter, the entry of default by the Clerk of the Court against Ji does not alter the Court's analysis for class certification.   Certification under Rule 23 remains a necessary procedural requirement in order for the Class to recover damages.   The prerequisites imposed by Rule 23 serve "the important function of protecting absent class members whose rights may be affected by the class certification." *Davis v. Hutchins*, 321 F.3d 641, 649 (7th Cir. 2003) (citing *Davis v. Romney*, 490 F.2d 1360, 1366 (3d Cir. 1974)).   As such, "relief cannot be granted to a class before an order has been entered determining that class treatment is proper." *Romney*, 490 F.2d at 1366.   In cases in which the district courts have entered a default judgment against a defendant and no class has been certified, only named plaintiffs can recover damages.   *See Partington v. Am Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 340 (4th Cir. 2006) (holding that class members could not use a default judgment to establish the class was judgment creditors when the district court never formally certified the class); *Hutchins*, 321 F.3d at 648-49 (holding that the district court improperly awarded class damages when no class had been certified).

However, in cases where a defendant failed to appear, an entry of default by the clerk of the court has not prevented district courts from considering whether to certify a class prior to the entry of a default judgment against a defendant.   *See Leider v. Ralfe*, 2003 WL 24571746, at *8-13 (S.D.N.Y. Mar. 4, 2003) (conducting class certification analysis following defendant's default and

---

[1]   The Class excludes Defendants, Ji's and She's immediate families, present and former officers and directors of CHNG and any subsidiary thereof, and Defendants' legal representatives, heirs, successors or assigns, and any entity in which Defendants have or had a controlling interest.   (D.I. 89 at 6 n.1).

4

denying certification for failure to meet requirements of Rule 23); *Trull v. Plaza Assocs.*, 1998 WL

578173, at *1, *4 (N.D. Ill. Sept. 3, 1998) (denying without prejudice the certification of a class

after defendant's default); *In re Industrial Diamonds Antitrust Litig.*, 167 F.R.D. 374, 376 n.1,

386-87 (S.D.N.Y. 1996) (certifying a class against co-defendants after one defendant's default).

An entry of default "does not change the fundamental analysis [the district court] must undertake

in deciding whether to certify the class." *Trull*, 1998 WL 578173, at *1. As a policy matter,

"any other conclusion might give defendants an incentive to default in situations where class

certification seems likely." *Leider*, 2003 WL 24571746, at *8.

In the present case, Ji has defaulted, but Plaintiffs have not yet moved for default judgment

against him. (D.I. 89 at 9). Therefore, this Court may consider Plaintiffs' Motion for Class

Certification.

## II. Class Certification and Appointment of Class Representatives under Rule 23

The Court finds that Plaintiffs have satisfied the requirements of Federal Rule of Civil

Procedure 23. "Rule 23 does not set forth a mere pleading standard. A party seeking class

certification must affirmatively demonstrate his compliance with the Rule..." *Wal-Mart Stores,*

*Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). The district court's analysis of a motion for class

certification "must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's

underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1194 (2013)

(quoting *Dukes*, 131 S. Ct. at 2551). The merits of a party's claim may only be considered to the

extent "that they are relevant to determining whether the Rule 23 prerequisites for class

certification are satisfied." *Id.* at 1195. "Factual determinations necessary to make Rule 23

findings must be made by a preponderance of the evidence." *In re Hydrogen Peroxide Antitrust*

*Litig.*, 552 F.3d 305, 320 (3d Cir. 2008).[2]   Parties seeking class certification under Rule 23 must

satisfy all four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b).   *Id.*

at 309-10 n.6.   Plaintiffs in this case have met their burden under Rule 23.   The Court will discuss

each requirement in turn.

### A. Rule 23(a) Requirements

In order for class representatives to bring suit on behalf of a class of plaintiffs, the court must

find that: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are

questions of law or fact common to the class; (3) the claims or defenses of the representative

parties are typical of the claims or defenses of the class; and (4) the representative parties will

fairly and adequately protect the interests of the class."   FED. R. CIV. P. 23(a).

#### 1. *Numerosity*

First, the court must find that the potential class is "so numerous that joinder of all members is

impracticable."   FED. R. CIV. P. 23(a)(1).   Determinations of whether numerosity is met must be

"based upon common sense."   *Walling v. Brady*, 1995 WL 447658, at *2 (D. Del. July 19, 1995).

"No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if

the named plaintiff demonstrates that the potential number of plaintiffs exceeds [forty], the first

prong of Rule 23(a) has been met."   *Stewart v. Abraham*, 275 F.3d 220, 226-27 (3d Cir. 2001).

Plaintiffs represent to the Court that, during the proposed class period, 1.2 million shares of

CHNG stock were traded on a weekly basis, demonstrating the existence of a large class of

potential plaintiffs.   (D.I. 55 at 45; D.I. 89 at 12).   Additionally, at the commencement of this

---

[2]   Plaintiffs cite *Chiang v. Veneman*, 385 F.3d 256, 262 (3d Cir. 2004) for the proposition that in ruling on class
certification, "the substantive allegations of the complaint must be taken as true."   (D.I. 89 at 10).   In *Hydrogen
Peroxide*, the Third Circuit identified *Chiang* as bad law on this point, stating that "[n]o supporting analysis of Rule 23
jurisprudence accompanied this statement, which contradicts and conflicts with" existing Third Circuit precedent.
552 F.3d at 318 n.18.

action, Plaintiffs' counsel issued a press release seeking individuals to serve as class representatives. (D.I. 89 at 12). Plaintiffs' counsel represents that counsel received 105 certifications from potential class members claiming to have suffered losses from their investment in CHNG during the same period as the Class. (D.I. 90 at 1). Therefore, the Class is sufficiently numerous.

### 2. *Commonality*

Second, the court must find "there are questions of law or fact common to the class." FED. R. CIV. P. 23(a)(2). "The commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class." *Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994). Commonality is not satisfied by a mere showing that members of the proposed class "have all suffered a violation of the same provision of law." *Dukes*, 131 S. Ct. at 2551. Rather, claims common to the entire class "must depend on a common contention... [that is] of such a nature that it is capable of [class-wide] resolution... [and] that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Courts in this District have previously held that "commonality was satisfied where the matter involved alleged violations of Sections 10(b)... and 20(a) of the Securities Exchange Act." *In re Heckmann Corp. Sec. Litig.*, 2013 WL 2456104, at \*10 (D. Del. June 6, 2013) (citing *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 296 (D. Del. 2003)).

In a cause of action for violations of § 10(b) and Rule 10b-5, Plaintiffs must show "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen*, 133 S. Ct. at

7

1192 (quoting *Matrixx Initiatives, Inc. v. Siracusano,* 131 S. Ct. 1309, 1317 (2011)).   Plaintiffs

allege Defendants failed to disclose material information regarding the Related Party Transactions

and the Bank Loan; Defendants did so knowingly or with reckless disregard; and, Plaintiffs and the

Class sustained losses in the same way as a result of Defendants' omissions.   (D.I. 89 at 13-14;

D.I. 55 at 48-51).   Thus, Plaintiffs' § 10(b) and Rule 10b-5 claim raises common questions of fact

and law capable of class-wide resolution.

Plaintiffs also claim that Ji, as President and CEO, is joint and severally liable for any

violations of the Securities Exchange Act by CHNG as a control person under § 20(a).   (D.I. 89 at

13; D.I. 55 at 51-53).   Whether Ji was a "control person" within the meaning of § 20(a) is also a

common question of fact.   Thus, the commonality requirement is satisfied.

### 3. *Typicality*

Third, the court must find "the claims or defenses of the representative parties are typical of the

claims or defenses of the class."   FED. R. CIV. P. 23(a)(3).   The typicality requirement "is

intended to assess whether the action can be efficiently maintained as a class" and "assure that the

absentees' interests will be fairly represented."   *Baby Neal*, 43 F.3d at 57.   "[C]ases challenging

the same unlawful conduct which affects both the named plaintiffs and the putative class usually

satisfy the typicality requirements irrespective of the varying fact patterns underlying the

individual claims."   *Id.* at 58.   "'Factual differences will not render a claim atypical if the claim

arises from the same event or practice or course of conduct that gives rise to the claims of the class

members, and if it is based on the same legal theory."   *Id.* (quoting *Hoxworth v. Binder, Robinson

& Co., Inc.*, 908 F.2d 912, 923 (3d Cir. 1992)).   The Third Circuit has identified "three distinct,

though related, concerns" in assessing typicality.   *In re Schering Plough Corp. ERISA Litig.*, 589

F.3d 585, 599 (3d Cir. 2009).   First, the legal theory and factual circumstances underlying that

theory advanced by the proposed class representatives "must be generally the same" as the claims of the proposed class. *Id.* Second, the class representatives "must not be subject to a defense that is both inapplicable to many members of the class and likely to become a major focus of the litigation." *Id.* Third, the interests and incentives of the class representatives "must be sufficiently aligned with those of the class." *Id.*

Prior to the filing of the Second Amended Complaint, an order was entered naming Sekway as Lead Plaintiff in this action. (D.I. 24). In the accompanying opinion, the Court found Skeway to be "the most adequate plaintiff" for having met the requirements of the Private Securities Litigation Reform Act ("PLSRA") (15 U.S.C. § 78u-4(a)(3)(B)), including satisfying the typicality and adequacy requirements of Rule 23(a). *Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 132, 135 (D. Del. 2011); (D.I. 23 at 5, 13). The party opposing Skeway's appointment as Lead Plaintiff failed to produce material evidence that Skeway was subject to unique defenses or that Skeway would not fairly represent the interests of the proposed Class. *Id.* at 133-35; (D.I. 23 at 9-13).

As with Skeway's appointment as Lead Plaintiff, both Skeway and Jo-Fung meet the typicality requirement as Class Representatives. First, Plaintiffs allege the same violations of § 10(b) and § 20(a) of the Securities Exchange Act as the proposed Class based on the same factual allegations regarding Defendants' failure to disclose the Related Party Transactions and the Bank Loan. (D.I. 89 at 15). Second, Plaintiffs are not subject to unique defenses, because, like members of the Class, Plaintiffs purchased CHNG shares on the open market. *Id.* Third, Plaintiffs' interests and incentives are aligned with the Class, as Plaintiffs seek to recover losses suffered as a result of Defendants' omissions. *Id.* Therefore, the typicality requirement is satisfied.

#### 4. *Adequacy*

Fourth, the court must find that the proposed class representatives "will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a)(4). To meet the adequacy requirement, the district court must find that (1) the class representatives' interests do not "conflict with those of the class" and (2) the proposed class counsel are "capable of representing the class." *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F.3d 154, 185 (3d Cir. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)).

The Court previously found that Skeway established his *prima facie* compliance with the adequacy requirement and that the opposing party did not present material evidence that Skeway could not meet the adequacy requirement of Rule 23. *Vandevelde*, 277 F.R.D. at 132-33, 135; (D.I. 23 at 7-8, 13). The Court found that Skeway had retained adequate counsel, the proposed Lead Counsel and Liaison Counsel for the Class, and that Skeway had no conflict of interest with the Class. *Id.* at 131, 132-33; (D.I. 23 at 4, 7-8)

As with Skeway's appointment as Lead Plaintiff, both Skeway and Jo-Fung are appropriate class representatives as their interests align with the interests of the Class. First, Plaintiffs allege they purchased CHNG shares at an artificially inflated price during the same period as the Class. (D.I. 55 at 5). Plaintiffs, like the proposed Class, seek to recover their losses resulting from Defendants' omissions. (D.I. 89 at 16). Further, Plaintiffs have affirmatively represented that they are willing to prosecute this action on behalf of the Class. (D.I. 90-1 at 45, 49; D.I. 89 at 16).

Second, the Class attorneys are capable of representing the Class. Proposed Lead Counsel and Liaison Counsel are experienced in both complex class litigation and securities actions. (D.I. 90-1).[3] Therefore, the adequacy requirement is satisfied.

---

[3]   The Court has seen both Lead and Liaison Counsel in multiple previous securities litigation.

### B.   Rule 23(b)(3)

If all requirements of Rule 23(a) are met, a class action seeking an award of damages is

appropriate under Rule 23(b)(3) if "the court finds that the questions of law or fact common to

class members predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for fairly and efficiently adjudicating the

controversy."   FED. R. CIV. P. 23(b)(3).

#### 1. *Predominance*

Under the first criterion of Rule 23(b)(3), the court must find that "questions of law or fact

common to class members predominate over any questions affecting only individual members."

FED. R. CIV. P. 23 (b)(3).   The predominance criterion is a "far more demanding standard" than

the commonality requirement of Rule 23(a)(2) and "tests whether proposed classes are sufficiently

cohesive to warrant adjudication by representation."   *Amchem Products, Inc. v. Windsor*, 521

U.S. 591, 623-24 (1997).   To determine whether common issues of fact or law predominate over

individual issues, the court must "examine the elements of plaintiffs' claim."   *Hydrogen*

*Peroxide*, 552 F.3d at 311 (citing *Newton*, 259 F.3d at 181).   "If proof of the essential elements of

the cause of action requires individual treatment, then class certification is unsuitable."   *Newton*,

259 F.3d at 172.

First, Plaintiffs' § 10(b) and Rule 10b-5 claim does not require individual treatment.   As

previously stated, a cause of action pursuant to § 10(b) and Rule 10b-5 requires Plaintiffs to prove

Defendants made a material misrepresentation or omission; with scienter; in connection with the

purchase or sale of a security; upon which Plaintiffs relied; causing Plaintiffs economic losses.

*Amgen*, 133 S. Ct. at 1192.   Plaintiffs' claim raises common questions of law and fact regarding

11

whether Defendants failed to disclose material facts regarding the Related Party Transactions and

the Bank Loan; whether the Defendants knowingly omitted information or acted with reckless

disregard; and, whether Defendants' omission caused class members to suffer losses.   (D.I. 89 at

17-18; D.I. 55 at 48-51).

The issue of whether Class members relied on Defendants' omissions does not require

individual treatment in this case.   For a § 10(b) and Rule 10b-5 claim, the element of reliance

"would ordinarily preclude certification of a class action seeking money damages because

individual reliance issues would overwhelm questions common to the class."   *Id.* at 1193.

However, for § 10(b) and Rule 10b-5 claims "involving primarily a failure to disclose" by persons

with a duty to disclose, "positive proof of reliance is not a prerequisite to recovery."   *Affiliated*

*Ute Citizens of Utah v. U.S.*, 406 U.S. 128, 153 (1972).   "All that is necessary is that the facts

withheld be material in the sense that a reasonable investor might have considered them important

in the making of this decision."   *Id.* at 153-54.   Conversely, there is no presumption of reliance

for alleged misrepresentations.   *Johnston v. HBO Film Mgmt., Inc.*, 265 F.3d 178, 192 (3d Cir.

2001).   Where plaintiff alleges both misrepresentation and omissions, the district court must

"'analyze the plaintiff's allegations, in light of the likely proof at trial, and determine…' on a case

by case basis, whether the offenses can be characterized primarily as omissions or

misrepresentations."   *Id.* (quoting *Sharp v. Coopers & Lybrand*, 649 F.2d 175, 187 (3d Cir.

1981)).

Here, Defendants' actions constitute omissions.   The Second Amended Complaint alleges

that Defendants knowingly concealed the Bank Loan, which represented more than 33% of

CHNG's total liabilities.   (D.I. 55 at 12; D.I. 89 at 21).   As a result, the Bank Loan was omitted

from CHNG's May 2010 quarterly report and its 2009 annual report.   (D.I. 55 at 3).   Further,

12

Plaintiffs allege that Defendant Ji failed to disclose to CHNG's board and internal auditors the Related Party Transactions. (D.I. 55 at 4). As a result, the Related Party Transactions were not disclosed as related-party transactions in CHNG 2010 annual report, its quarterly reports, or its proxy statements. *Id.* Plaintiffs allege that CHNG stock prices declined with the discovery of each non-disclosure. *Id.* Though Plaintiffs allege that CHNG's financial statements were false and misleading, the underlying conduct that caused the misrepresentations are Defendant's omissions. (D.I. 55 at 2-4). Therefore, the alleged conduct central to Plaintiffs' claims is properly characterized as omissions.

Defendants' omissions are also material. Both GAAP and SEC regulations obligated Defendants to disclose the Bank Loan and Related Party Transactions. (D.I. 55 at 18-23; D.I. 89 at 20). Plaintiffs allege that as a result of the omissions, Plaintiffs and the Class purchased CHNG shares at an inflated price. (D.I. 89 at 21). Further, disclosure of the Bank Loan and Related Party Transactions caused CHNG's share price to decline and led NASDAQ to halt trading and delist CHNG's shares. *Id.* Because the disclosure of the omissions is alleged to have resulted in the decline in price and delisting of CHNG's share from the NASDAQ stock exchange, the omissions are material as a reasonable investor would have deemed the omissions important in deciding whether to purchase CHNG shares. Thus, Plaintiffs are entitled to a presumption of reliance under *Affiliated Ute*. Therefore, Plaintiffs' § 10(b) and Rule 10b-5 claim does not require individual treatment.

Second, Plaintiffs' claim under § 20(a) does not require individual treatment. The issue of whether Ji was a "control person" within the meaning of the statute is a common question of fact capable of class-wide resolution. (D.I. 55 at 52-53)

13

Therefore, Plaintiffs' claims predominantly raise questions of law and fact capable of

class-wide resolution.   The only issue requiring individual treatment will be the computation of

damages for the Class members.   (D.I. 89 at 18).   Therefore, the predominance requirement of

Rule 23(b)(3) is met.

### 2. *Superiority*

Under the second criterion of Rule 23(b)(3), the district court must find that "class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."   FED.

R. CIV. P. 23(b)(3).   Rule 23(b)(3) enumerates a non-exhaustive list of factors to consider:

> (A) the class members' interests in individually controlling the prosecution... of
> separate actions; (B) the extent and nature of any litigation concerning the
> controversy already begun by... class members; (C) the desirability... of
> concentrating the litigation of the claims in the particular forum; and (D) the likely
> difficulties in managing a class action.

*Id.*   The Courts of Appeals have noted that "'a class action in a federal securities action may well

be the appropriate means for expeditious litigation of the issues, because a large number of

individuals may have been injured, although no one person may have been damaged to a degree

which would have induced him to institute litigation solely on his own behalf.'"   *Eisenberg v.*

*Gagnon*, 766 F.2d 770, 785 (3d Cir. 1985) (quoting *Green v. Wolf Corp.*, 406 F.2d 291, 296 (2d

Cir. 1968)).

Here, Plaintiffs convincingly represent to the Court that maintaining separate claims is

impractical as the number of potential Class members is too numerous and the typical claims of the

Class are too small.   (D.I. 89 at 23).   Additionally, because CHNG's shares were sold on a

national stock exchange and the Class is likely dispersed nation-wide, it is desirable that litigation

of these claims be concentrated in a single forum.   *Id.*   This District is a logical choice as CHNG

is a Delaware corporation.   (D.I. 89 at 7).   Further, there are no foreseeable management issues

which preclude maintaining this action as a class action.   Therefore, the superiority requirement of Rule 23(b)(3) is met.

## III.   Appointment of Class Counsel

Lastly, Plaintiffs' Lead Counsel and Liaison Counsel satisfy the requirements of Rule 23(g)(1)(A) for the appointment of as class counsel.   In appointing class counsel, the district court must consider: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class."   FED. R. CIV. P. 23(g)(1)(A).

Here, the proposed counsel for the Class has already committed resources to identifying class representatives and potential class members.   (D.I. 89 at 12).   Additionally, Lead Counsel has already pursued the interests of the Class by defending the initial Complaint in response to a Motion to Dismiss, filing the Second Amended Complaint, and engaging in efforts to serve the Defendants residing in the People's Republic of China.   (D.I. 89 at 24).   Further, Lead Counsel has a history of successfully prosecuting securities class actions.   (D.I. 90-1).   Therefore, the Court finds that appointment of Lead and Liaison Counsel for the Class is appropriate.

## CONCLUSION

For the reasons discussed above, Plaintiffs' Motion for Class Certification and Appointment of Class Representatives and Class Counsel is granted.   A separate order will be entered.

15